[No. 6,922.—In Bank.]
May 29, 1882.

60    517
89    293
60    517
103   220

## CHARLES B. YOUNGER v. EDWARD PAGLES ET AL.

EJECTMENT—MEXICAN GRANT—SURVEY UNDER THE ACT OF JUNE 14, 1860—
FINAL CONFIRMATION — APPEAL — PRESUMPTION — JURISDICTION OF
UNITED STATES DISTRICT COURT—STATUTE OF LIMITATIONS—PATENT—
PRE-EMPTION.—In an action of ejectment, the facts as found by the
Court were in substance as follows: The land in controversy is within
the limits of a Mexican grant to the predecessors in title of the plaintiff,
approved by the Departmental Assembly, and of which the juridical
possession has been delivered. The claim was duly presented and con-
firmed by the Land Commissioner and the United States District Court.
An appeal was taken to the Supreme Court, but afterwards (in the
year 1857), the District Court made an order dismissing the same. In
the year 1858, the grant was surveyed by the United States Surveyor
General, so as to include the premises in controversy; but in 1861, the
survey not having been previously approved, the Surveyor General al-
tered the northern boundary of the survey, so as to exclude it. The
survey so corrected was approved, and advertised in accordance with
the provisions of the Act of June 14, 1860; and no objection was made
to the survey until the sixteenth day of June, 1869, when it was again
advertised under the provisions of the Act of July 2, 1864; and objec-
tions were made by the owners of the grant, which were still pending,
when the suit was brought. The defendant P. entered upon the land
in controversy on the ninth day of January, 1860, and has since held
the adverse possession. On January 10, 1868, a patent issued to one
Henry P., as a pre-emptor, for a portion of the land, who conveyed the
same to the defendant P.; to whom also, on May 2, 1870, a patent issued
for the balance of the land. The action was commenced on the fifteenth
day of April, 1868.
Held: 1. The case does not show that the claim to the ranch in question
has been finally confirmed by the authorities of the United States. The
order of the District Court dismissing the appeal was absolutely void, if
the appeal to the Supreme Court was pending when the order was made,
and the conclusive presumption is that the appeal is still pending, in the
absence of a direct finding to the contrary; 2. The action having been
commenced at a date less than five years after the passage of the Act of
April 18, 1863, the plaintiff is not bound by the Statute of Limitations.

APPEAL by plaintiff from a judgment for defendant Pagles
in the Twentieth District Court of the County of Santa Cruz.
BELDEN, J.

The judgment was reversed.

*Charles B. Younger*, for Appellant.

· The ranch could not be surveyed pending an appeal from
the decree of the United States District Court for the South-

ern District of California, confirming the claim to said ranch. The appeal gave the United States Supreme Court jurisdiction in the premises, and, pending such appeal, the United States District Court, if it otherwise had jurisdiction of the cause, was ousted of all jurisdiction therein. (*McGarrahan* v. *New Idria Mining Co.*, 49 Cal. 33.)

The order of the District Court, dismissing the appeal, was void. (*Penhallow* v. *Doane's Administrator*, 3 Dallas, 54; *Woodbury* v. *Bowman*, 13 Cal. 634; *Covarrubias* v. *Board of Supervisors*, 52 id. 622; *Thornton* v. *Mahoney*, 24 id. 569.) While this appeal was pending, the claim to said ranch had not been finally confirmed; and, under said Act of March 3, 1851, no survey of this ranch could be made until final confirmation.

The premises in suit were not subject to pre-emption; and the patents issued on pre-emption claims to Henry Pagles and defendant Pagles, are void. (*Stoddard* v. *Chambers*, 2 How. 284; *Easton* v. *Salisbury*, 21 id. 426; *Morton* v. *Nebraska*, 21 Wall. 660; *Best* v. *Polk*, 18 id. 112; *Sherman* v. *Buick*, 93 U. S. 209.)

This action was commenced in time. The complaint was filed on April 15, 1868, and this was prior to the expiration of the time allowed by the amendments of April 18, 1863, to said statute. (Statutes 1863, p. 325; *Palmer* v. *Low*, 98 U. S. 17.)

*Joseph H. Skirm*, for Respondent.

On February 5, 1861, the survey, corrected and platted, received the approval of the Surveyor-General; and the survey then became a complete survey, and not before. (*Medley* v. *Robertson*, 55 Cal. 396, overruling *Oakley* v. *Stuart*, 52 id. 521; Act of Congress, June 14, 1860; Brightly's Digest, 1133; *United States* v. *Sepulveda*, 1 Wall. 104.) That the publication was regular is beyond question.

No objection to the survey was made within that time, and it then became finally determined, and the equivalent of a patent by the last clause of Section 5 of said Act. (*Gallagher* v. *Riley*, 49 Cal. 477.)

Every presumption is in favor of the action of the District Court, and it will be presumed to be regular until the con-

trary is affirmatively shown. There is no finding that the appeal is still pending, and the order of the District Court may have been made upon the mandate of the Supreme Court directing the dismissal of the appeal for want of prosecution filed in the District Court.

The Act of Congress of 1864, to settle California titles, did not destroy the validity and effect of the publication of the approved survey in 1861. That survey had the same force as a patent and passed the legal title to the land, and the United States had no more right to annul that title than any private owner of land who had conveyed it. (*Moore* v. *Robbins*, 96 U. S. 530.)

The approved survey became final in March, 1861, and having the validity and effect of a patent, the statute began to run from that time.

McKINSTRY, J.:

1. The case does not show that the claim to the Rancho Arroyo del Rodeo has been finally confirmed by the authorities of the United States. The Court below found: " On the seventh day of March, 1856, the United States, by the regularly authorized District Attorney, gave regular notice of appeal, upon the part of the United States, from the decision and decree of said District Court to the Supreme Court of the United States. And said cause was regularly appealed by the United States from the said District Court to the Supreme Court of the United States. That thereafter and upon the —— of ———, 1857, at a subsequent term of said United States District Court, the said *District* Court of the United States made an order that said appeal *was thereby dismissed*, and the said claimants had leave to proceed as upon the final decree."

The order of the District Court was absolutely void if the appeal to the Supreme Court was pending when the order was made, and the conclusive presumption is, that the appeal is still pending, in the absence of a direct finding to the contrary. (*McGarrahan* v. *New Idria Co.*, 49 Cal. 381.) There is no finding that the appeal has ever been dismissed, or that any disposition has been made of it in the Supreme Court.

Nor can we resort to any presumption to help out the de-

fective finding so as to make it sufficient to sustain the judgment. The order of the District Court does not recite or refer to any remittitur or mandate of the Supreme Court of the United States or pretend to assert that an order of dismissal had been made in the latter Court. No law of the United States has been called to our attention, or any practice in the Federal Courts, showing that such an order of the District Court followed, in the usual course, the dismissal of the appeal in the Supreme Court. The order does not purport to rest upon any previous action of the appellate tribunal, but implies, by its very terms, the exercise of an inherent and independent jurisdiction to put an end to the appeal and make final the judgment already entered. To hold that the order of the District Court conclusively proves that the appeal had been dismissed, is to overthrow the presumption arising from the fact that the appeal had been taken, and by means of a new presumption, to inject into the order a meaning entirely different from that which is expressed by its unambiguous language. Even if the order of the District Court can be treated as *evidence* tending to prove that the appeal had been dismissed, yet, as it does not conclusively establish the dismissal, the finding of the probative fact can not be substituted for a finding of the ultimate fact. (*Coveny* v. *Hale*, 49 Cal. 552.)

2. The plaintiff is not barred by lapse of time. The action was commenced at a date less than five years after the passage of the Act of April 18, 1863. (Statutes of 1863, p. 325.) The sixth section of that Act reads: "The time that shall have already run under the act of which this is amendatory, when this Act takes effect, shall be taken and computed as a portion of the time in this Act limited for the commencement of an action, or the making of a defense thereto; * * * provided, that any person claiming real property, or the possession thereof, or any right or interest therein, under title derived from the Spanish or Mexican Governments, or the authorities thereof, which shall not have been *finally confirmed* by the Government of the United States, or its legally constituted authorities, *more than five years* before the passage of this Act, may have five years *after* the passage of this Act in which to commence his action for the recovery of such real

property, etc.; and, *provided* further, that nothing in this Act contained shall be so construed as to extend or enlarge the time for commencing actions for the recovery of real estate, or the possession thereof, under title derived from Spanish or Mexican Governments, *in a case* where final confirmation has already been had, *other* than is now allowed by the act to which this Act is amendatory." (Act of April 11, 1855.)

The seventh section of the Act of 1863 defines "final confirmation" within the meaning of the Act, and declares that final confirmation "shall be deemed to be the *patent* issued by the Government of the United States," *or* "the final determination of the official survey" under the provisions of the Act of Congress approved June 14, 1860.

There can be no misapprehension of the language employed in the first of the two provisos above recited. Every person claiming under a Spanish or Mexican grant or title, was given full five years after the Act of 1863 took effect, to bring his action, unless the grant or title was "finally confirmed" more than five years before the Act of 1863 took effect.

There is nothing in the other proviso which necessarily derogates from or destroys the effect of the first, upon a title in the condition of that of the plaintiff. The ordinary time within which must be brought an action for the recovery of real property, or its possession, is five years. The second proviso declares that this time shall not be extended by the Act of 1863, in any case in which it would not be extended by the Act of 1855. But by the Act of 1855 the time was extended in every case until a *patent* should issue. (*Johnson* v. *Van Dyke,* 20 Cal. 225; *Davis* v. *Davis,* 26 id. 46; *Beach* v. *Gabriel,* 29 id. 580.) No patent has ever been issued to plaintiff, or his grantors. Hence, by holding that by virtue of the first of the provisos quoted from the sixth section of the Act of 1863, the time for plaintiff to bring his action was extended for five years from the taking effect of that Act, we do not construe the Act of 1863 as extending or enlarging the time in a case in which it was not allowed under the Act of 1855.

It is not our task to harmonize the provisos. It is enough to say that the first gave to the plaintiff five years to bring his action after the Act of 1863, and the second did not take the right away from him.

It follows, from what has been said, that, even if the claim to the rancho had been confirmed by final decree of the Supreme Court of the United States prior to the alleged publication of the survey under the Congressional law of 1860, the plaintiff would have five years to bring this action after the statute of the State, of 1863, took effect.

If a case presented the fact of a patent having been issued less than five years before the Act of 1863, it might be necessary to determine whether the time between the date of the patent and the Act of 1863 should be included as a part of the five years' limitation, notwithstanding the language of the first proviso, which gives to one to whom a patent has been issued within five years, five full years to bring his action, after the Act of 1863 took effect. But the question does not arise here, since no patent has yet been issued to the plaintiff.

There is, however, a conclusive answer to the suggestion, that the period of limitations began to run at the expiration of the publication of the survey in 1861. None of the Acts of Congress to which reference has been made authorize a survey, or segregation of lands granted by the Spanish or Mexican Governments until after the claim has been declared valid by the proper authorities of the United States.

Ross, McKee, Thornton, JJ., and Morrison, C. J., concurred.

Myrick, J., dissenting:

This is an action of ejectment, brought to recover possession of lands, claimed by plaintiff to be within the exterior boundaries of the Rancho Arroyo del Rodeo. The tract of land of which the plaintiff claims that juridical possession was given under the Mexican Government, included the lands in controversy, the grant being of a tract one quarter of a league in width, between the Arroyos del Rodeo and Soquel, and one league in length northward from the Bay of Monterey. The Land Commission confirmed the grant, and on appeal to the District Court of the United States, the grant was held valid to the extent of one league in length by one quarter of a league in width, within the boundaries above stated.

From this confirmation an appeal was taken to the United States Supreme Court, but it does not affirmatively appear that any action has been had in that Court. In 1857 an order was made by the District Court, that the appeal was thereby dismissed, and that the claimants had leave to proceed as upon final decree.

In 1858 a deputy United States Surveyor made a survey in the field, which survey included the premises in controversy. This survey was not approved; on the contrary, the United States Surveyor-General for California, in 1861, altered and corrected the northern boundary line of the rancho, as reported by the deputy surveyor, and caused a map to be platted, upon which the northern line of the grant was laid down and run, and included no part of the premises in controversy. The survey, as thus altered and corrected, and the map thereof, were approved by the Surveyor-General February 5, 1861, and were by him placed on file in the records of his office; thereupon the said Surveyor-General, in 1861, gave notice of such survey, by publication, as required by the Act of Congress of June 14, 1860. Under this publication no objections were made to the survey, and no application was made to the District Court for any order. In 1869 the Surveyor-General, assuming to act under the Act of Congress of July 2, 1864, caused another notice of the survey to be published, and, under this last publication, objections to the survey were filed by the plaintiff and others; but at the commencement of this suit no other steps had been taken, nor had the Commissioner of the General Land Office acted in the premises; no patent had been issued, and, so far as appears, the survey still remained in the office of the Surveyor-General.

In 1853, plaintiff's grantors let one Rider into possession of the premises in controversy, under an agreement to occupy it for dairy purposes. Rider never surrendered possession of the premises to plaintiff's grantors, but on the ninth day of January, 1860, asserting himself to be the owner, and denying the right of the plaintiff's grantors to the same, and denying that the premises were or ever had been any part of the Rancho Arroyo del Rodeo, conveyed his interest therein to defendant Pagles, who then entered into possession of the whole of the premises in controversy, inclosed the same by a

substantial fence, and ever since has and still occupies the same for farming and agricultural purposes, residing thereon, and ever since such purchase he, Pagles, has been in the open, notorious, continued, undisturbed, and uninterrupted possession and occupation of the land, denying the title and claim of plaintiff to the same, and denying that any part thereof did belong or had belonged to said rancho, but asserting that the same was, until the date of the patents hereinafter mentioned, portions of the public domain of the United States, and that since the dates of such patents he is the owner in fee of the whole thereof. The patents above referred to are patents issued by the officers of the United States in 1868 and 1870, upon pre-emption claims made by said Pagles and another, and the title, if any, granted by said patents, is vested in the defendant Pagles.

The Court below rendered judgment in favor of the defendant Pagles, holding that "the approved survey of the United States authorities, until set aside, must, for all the purposes of this controversy, be taken as conclusively establishing the true lines of the grant, and until the same is corrected, modified, or set aside, must be held binding upon Courts and litigants." I think the Court below was correct. The approval of the survey and plat of February 5, 1861, by the Surveyor-General, and the publication of the notice (no objection being made thereto) was a confirmation of the grant to plaintiff's grantors, and determined the boundaries of the grant, at least for the purposes of this case, and plaintiff can not recover possession of the premises so long as it shall stand. (*Bernal* v. *Lynch,* 36 Cal. 144; *Seale* v. *Ford,* 29 id. 106.) The publication of the notice by the Surveyor-General in 1861—no objection having been made, or other proceeding had, in relation thereto—was a confirmation of the survey and an establishing of the lines of the grant. It had, under the Act of Congress of June 14, 1860, "the same effect and validity as if a patent for the land surveyed had been issued by the United States," and the plaintiff stands in the same position as he would if he had his patent. (*Seale* v. *Ford, supra.*) It seems that under the Act of Congress of July 2, 1864, the survey must be forwarded to the Commissioner of the General Land Office for his action; but the survey in this case had, under

the Act of June 14, 1860, become approved before the passage of the Act of 1864. The right to measure off and fix the lines of a grant rests with the political department of the Government. (*Moore* v. *Wilkinson*, 13 Cal. 486.)

The defendants' plea of the Statute of Limitations, too, is effectual to defeat this action. Reading the Acts of the Legislature of this State of April 11, 1855, and April 18, 1863, together, it appears that the right of defendant Pagles to retain possession until plaintiff shall, if he can, obtain a patent upon his grant, is clearly provided for; he is within the last proviso of Section 6 and within Section 7 of the Act of 1863. Under the Statute of Limitations of this State he had been in the possession of the premises more than five years, under an approved survey, before the republication made by the Surveyor-General; and such republication, and the objections filed thereunder, would not affect his right. We are aware of the decisions of the United States Supreme Court and of this Court, that where juridical possession has been delivered under a Mexican grant, the grantee may recover to the exterior lines of such possession and grant; the principle of such cases does not apply here. In this case the Government of the United States has performed its part of the treaty with the Mexican Government, and has, by its proper officer, in the method provided by law, ascertained the extent of the grant, and is, doubtless, ready to issue its patent when called for. It has ascertained in the method provided by law, that, even though juridical possession of the premises in controversy may have been delivered to the grantee, yet the grant, as confirmed, did not include the premises, and therefore the grantee took no title thereto. Under the decisions, the right of the grantee to maintain ejectment for all the lands within the limits of the juridical possession exists down to the time of establishing the limits of the grant by the United States Government; and when so established, the lines of the juridical possession must, of course, yield to the established lines. (*Chipley* v. *Farris*, 45 Cal. 528 ; *Mahoney* v. *Van Winkle*, 33 id. 448.)

I, of course, omit to give any consideration to the effect of the patents held by Pagles ; because if plaintiff had any right or claim to the lands as belonging to his grant, Pagles' patents

were issued without authority of laws ; on the other hand, if the survey became final, the land was a portion of the public domain and subject to pre-emption.

As to the point that an appeal was taken to the Supreme Court of the United States from the District Court, and that it does not appear that such appeal was ever dismissed by the appellate Court, it does not appear that the appeal was not dismissed, and as the District Court subsequently made an order authorizing the grantee to proceed as upon a final decree, and as proceedings were had, viz., a survey and approval, the law will, after such a lapse of time, presume that the District Court had before it an order of dismissal or a stipulation justifying its action, rather than that it acted without such order.