[No. 12695. In Bank. — May 28, 1891.]

ALPHEUS BULL, APPELLANT, *v.* WATSON A. BRAY
ET AL., RESPONDENTS.

FINDINGS — PROBATIVE FACTS — ULTIMATE FACT — REVIEW ON APPEAL. —
Where probative facts only are found, yet if the ultimate fact flows as a
necessary conclusion therefrom, the findings are sufficient; but in order
to warrant the appellate court in inferring an ultimate fact from pro-
bative facts, it must inevitably follow from the facts found.

ID. — DEED TO DEFRAUD CREDITORS — FRAUDULENT INTENT — INSOLVENCY —
WANT OF CONSIDERATION. — In an action by a judgment creditor to set
aside deeds of gift made by the judgment debtor to his wife as being
void as against prior creditors, it is necessary specifically to find that the
deeds were made with a fraudulent intent, in order to sustain a judg-
ment for the plaintiff, and such finding cannot be inferred from findings
that the deeds were without consideration, and that the judgment debtor
was insolvent when he made them, though without full knowledge of
his actual financial condition, and that by the making of them he hin-
dered, delayed, and defrauded the plaintiff in the collection of his debt.

ID. — QUESTION OF FACT — INFERENCE OF FACT — APPEAL. — Under the code
of this state, the question of fraudulent intent is one of fact, and not of

law; and though such intent might properly be inferred and found as a fact by the trial court from the other facts found, to wit, insolvency and want of consideration, yet such inference or finding cannot be made by the appellate court.

ID. — KNOWLEDGE OF INSOLVENCY — DISPUTABLE PRESUMPTIONS — INFERENCE OF FRAUDULENT INTENT — REBUTTAL. — The presumptions that every man knows the condition of his own business, and that every man intends the consequences of his acts, are disputable, and an inference of the fact of fraudulent intent from a deed of gift by an insolvent debtor to his wife, which might rest upon those presumptions, is overcome by a finding that he was ignorant of the fact of his insolvency.

APPEAL from an order of the Superior Court of Alameda County granting a new trial.

The facts are stated in the opinion of the court.

*J. F. Wendell, W. B. Sharp, S. C. Denson,* and *William H. Sharp,* for Appellant.

*Chickering & Thomas, Garber & Bishop,* and *J. P. Phelan,* for Respondents.

GAROUTTE, J. — This is an appeal from an order granting defendants a new trial.

The action was brought by plaintiff, a judgment creditor, to set aside two certain deeds of gift made by defendant Watson A. Bray, the judgment debtor, to Julia A. Bray, his wife, May 20, 1880, and August 3, 1881, respectively, of lands in Contra Costa County, as being void against prior creditors. Plaintiff's debt had been reduced to judgment; execution was issued thereon, and returned wholly unsatisfied.

In the lower court plaintiff had judgment as prayed for, declaring said deeds null and void as against his judgment, and that he be entitled to enforce his execution against the property in said deeds described. Defendants moved for a new trial, and their motion was granted, upon the ground that the findings as filed omitted to find upon the issue of intent raised by the pleadings in the case; that is to say, there is no finding on the issue made by the pleadings, whether the con-

veyances from Bray to his wife, referred to in the pleadings, were made or accepted with *intent* to hinder, delay, or defraud the plaintiff or other creditors of said Bray.

The question presented by this appeal is, therefore, whether, in view of the facts found by the court, it was necessary to make a further finding as to the fraudulent intent. For if the facts found by the court necessarily establish the fraudulent intent, that satisfies the law. If probative facts only are found, yet if the ultimate fact flows as a necessary conclusion therefrom, the findings are sufficient. (*Osborne* v. *Clark*, 60 Cal. 623; *Biddel* v. *Brizzolara*, 56 Cal. 381; *People* v. *Hagar*, 52 Cal. 189; *Coveny* v. *Hale*, 49 Cal. 555.)

The only findings of the court necessary to consider in the investigation of this most important question are as follows:—

1. That said deeds were entirely voluntary, and there was no valuable consideration whatever for the making and delivery of the same, and said deeds were deeds of gift; 2. That at the times of the making of said deeds the defendant Watson A. Bray was insolvent, and has ever since remained insolvent; 3. That defendant Bray, at the time he made and delivered said deeds, was not fully aware and did not know his actual financial condition, and his inability to pay and discharge in full his then outstanding debts and liabilities; 4. That by the making and delivery of said deeds Watson A. Bray did hinder, delay, and defraud this plaintiff in the collection of his debt.

This action rests upon section 3439 of the Civil Code. "Every transfer of property . . . . made . . . . with intent to delay or defraud any creditor . . . . is void."

"Every transfer of personal property . . . . is conclusively presumed if made by a person having . . . . the possession or control, . . . . and not accompanied by an immediate delivery, . . . . to be fraudulent, and

therefore void, against those who are his creditors, while he remains in possession." (Civ. Code, sec. 3440.)

Then, to exclude all possibility of misconception arising out of the conflicting decisions of other states as to whether the question of intent is a matter of law or of fact, section 3442 provides that in all cases arising under section 3439 "the question of fraudulent intent is one of fact, and not of law." It further provides that no transfer shall be adjudged fraudulent solely on the ground that it was not made for a valuable consideration. It also expressly excepts transfers of personal property arising under section 3440, for that section makes the question one of law by providing that transfers made in a certain way shall create a conclusive presumption of fraud.

The general contention of appellants in this case is fairly illustrated by the doctrine laid down by Bump in his work on Fraudulent Conveyances, 3d ed., pp. 271, 272: "If the act necessarily delays, hinders, or defrauds his creditors, then the law presumes that it is done with fraudulent intent. The intent is to be assumed from the act. The circumstances of the act itself is conclusive evidence of fraud; for no man is permitted to say that he does not intend the necessary consequences of his own voluntary act. The law will not speculate about what is actually passing in the donor's mind; for the act need not be immoral or corrupt. The law does not concern itself about the private or secret motives which may influence the debtor. . . . . He may make a conveyance with the most upright intentions, really believing that he has a right to do so, and that it is his right and duty to do it, and yet if the transfer is voluntary, and hinders, delays, or defrauds his creditors, it is fraudulent. . . . . The presumption in such a case is conclusive, and against it all other evidence is unavailing. The debtor may have some other purpose in view, but the intent to defraud is a part and parcel of his act.

LXXXIX. CAL.—19

It is upon these principles that the law relating to voluntary conveyances rests. In the construction of the statute, they are deemed within its operation, when they necessarily tend to defeat the just rights of creditors, even though they are made *bona fide,* and with the intention of conferring a gratuitous benefit upon some meritorious object. The law stamps a man's generosity with the name of fraud, when it prevents him from acting fairly towards his creditors, and presumes fraud if he disables himself from paying his debts. In such case the presumption of fraud arises, and may exist without the imputation of moral turpitude. The principle is, that persons must be just before they are generous, and that debts must be paid before gifts can be made."

This doctrine, ever since the celebrated case of *Reade* v. *Livingston,* 3 Johns. Ch. 500, 8 Am. Dec. 520, decided by Chancellor Kent, has been recognized and accepted by many judges in many states of the Union.

Respondents insist that "the question of intent is a question of fact, and that the intent or purpose of the grantor in making the transfer in all cases is a question for the jury, and that it is material to the issue to determine whether the act done is a *bona fide* transaction or whether it is a trick or contrivance to defeat creditors; that the question of solvency or insolvency of the grantor at the time of the making of the deeds is a matter of evidence to be given its due weight in determining the ultimate fact as to the fraudulent intent of the grantor; that a rich man may make a fraudulent deed as well as one who is insolvent; and that while a voluntary conveyance by an insolvent may be *prima facie* fraudulent, it cannot be conclusively fraudulent, for that would make the question of intent a question of law, and thus be in violation of that provision of the code which says it shall be a question of fact."

These views, to a great extent, are supported by the

exhaustive case of *Seward* v. *Jackson*, 8 Cow. 450, and by other authority, both English and American.

The cases in this country passing either directly or indirectly upon the questions involved in this litigation are practically numberless, and as we have already seen, are greatly at variance. But as has been said by Bigelow on Fraud, ed. 1877, preface, pp. 4, 5: " The law here to be applied is statutory law, and as to the statutory law concerning fraud on creditors and purchasers, each state of the Union, with few exceptions, has a code of its own, interpreted by independent tribunals and enforced by distinct and diverse penalties and procedure. With deference to the views of others, who have attempted to present a harmonious view of the statutes of the different states, the author is satisfied that such efforts are both unsatisfactory and dangerous. The decisions of the courts of New York concerning the interpretation of an ambiguous statute of that state, that is, concerning the intention of the legislature of that state in the passage of the act, cannot be safe authority in another state, even upon a question of the meaning of a statute framed in the very same words. The legislature of New York meant one thing by the language used, and the legislature of another state may have meant something else, and so the courts of each state may have declared, and rightly. To say, therefore, that the decisions are in conflict is incorrect, and to attempt to deduce the true rule of law as applicable to both states is vicious."

Without attempting to deduce the true rule from the many authorities of many states, we will discuss this case by the authority of our statutes and codes, and in the light of the decisions of our own judicial tribunals.

Having found the fact that the conveyances were voluntary conveyances, that the defendant Watson A. Bray was insolvent at the time he made the conveyances, and that these conveyances delayed and defrauded the plaintiff in the collection of his debt, was it still necessary for

the court to find the further fact, that the intent of the grantor in making the conveyances was to delay and defraud creditors? and was the court justified in granting a new trial by reason of its failure to make such finding?

Appellant contends that the absence of a finding of intent is immaterial, because the conveyance being voluntary, the grantor being insolvent, and the conveyance having defrauded the creditor, the *intent* to delay and defraud follows as an absolute and conclusive presumption, and the intent, being the ultimate fact, necessarily results from such *probative facts.*

In order to support this contention, the ultimate fact must follow necessarily; that is, as a matter of law from the other facts.

In *Coveny* v. *Hale,* 49 Cal. 556, the court said: "Of course it is only when the conclusion follows as a matter of law that such a finding will be held sufficient."

"The only inferences which we can draw from the findings," said the court in *De Celis* v. *Porter,* 65 Cal. 10, "are inferences of law. We are not allowed to draw inferences of fact from the facts found. If this court would infer a fact from other facts, it would be usurping the province of the trial court, which alone can find the facts in issue. This is the rule with regard to special verdicts, and we are of opinion that the same rule applies to findings of fact."

To the same effect are the cases of *Chandler* v. *People's Sav. Bank,* 65 Cal. 499; *Salisbury* v. *Shirley,* 66 Cal. 228; *Hibberd* v. *Smith,* 67 Cal. 556; 56 Am. Rep. 726.

It may be conceded that it would have been perfectly proper for the trial court to have drawn an inference of fact as to the fraudulent intent of the grantor from the other facts found; and that this court might be justified in setting aside a finding to the contrary as not being supported by the evidence (*Judson* v. *Lyford,* 84 Cal. 505), but that does not dispense with the necessity of an actual and express finding as to the ultimate fact as a

fact by the lower court, nor authorize this court to ex-
ercise what would be *original jurisdiction* by supplying a
finding upon this most vital and essential matter.

As section 3442 of the Civil Code declares that the
question of fraudulent intent is "one of fact, and not of
law," it is not entirely plain that this court can, under
any state of facts, however plain they might be, hold
that the ultimate fact might flow from the probative
facts as a *matter of law.*

But assuming that the ultimate fact of "intent to de-
fraud" may flow as "matter of law" from the probative
facts, yet, to obviate a finding of this ultimate fact, the
facts found must *necessarily* and conclusively indicate
that the grantor was possessed of the intent to defraud
at the time the conveyances were made.

If the facts found do not absolutely exclude all possi-
bility of the absence of fraudulent intent in the mind of
the grantor, then the want of the finding of such intent
cannot be dispensed with in this court.

Thus in the case of *Emmal* v. *Webb,* 36 Cal. 204, the
court, in considering whether it could infer a fact from
other facts, said: "To warrant us in so doing, the fact
to be inferred must follow inevitably from the facts
found; or in other words, the non-existence of the fact
to be inferred must, upon every conceivable theory of
which the case will admit, be inconsistent with the ex-
istence of the facts which are found." And to the same
effect are *Coveny* v. *Hale,* 49 Cal. 556; *Younger* v. *Pagles,*
60 Cal. 520; *Walker* v. *Buffandeau,* 63 Cal. 312; *Coglan* v.
*Beard,* 65 Cal. 63; *Alhambra Addition Water Co.* v. *Rich-
ardson,* 72 Cal. 601.

We then proceed to consider whether there is any
possible state of facts consistent with the findings of the
court heretofore quoted, and also consistent with the
absence of fraudulent intent in the mind of the grantor
at the time of the making of the deeds sought to be set
aside in this action.

The finding of the court "that the defendant Bray by the making of these deeds *did* hinder, delay, and defraud the plaintiff in the collection of his debt" throws no special light upon the solution of the question as to the actual intent of the grantor, while important as evidence of the intent, by reason of the presumption that every man intends the usual and ordinary consequences of his voluntary acts, yet our statute requires that a conveyance shall not only delay and defraud creditors, but that it was *made with the intent* to delay and defraud; and the statute appears to recognize the intent as the prevailing and controlling element in measuring the *bona fides* of the transaction.

Bray did actually defraud Bull in the making of the deeds by depriving him of property which would otherwise have been applied to the satisfaction of the execution, but it does not necessarily and conclusively follow therefrom that the intent was present in his mind to defraud, or that in making the transfer he may not have been actuated by the most honest motives.

Appellant insists that the existence of the facts, to wit, "that the grantor was insolvent at the time of the transfer, and that the conveyances were deeds of gift, render the inference of fraudulent intent absolute and conclusive, and a conveyance under such circumstances, therefore, would be void under any and all conceivable state of facts, and this is the important and determinative question in this case." Very many of the authorities from other states relied upon by appellant to support this contention rest in whole or in part upon the presumptions "that every man intends the usual and natural consequences of his voluntary act," and that "every man is presumed to know the condition of his own business"; and applying those presumptions, it is said that the natural consequence of an insolvent giving away his property is to defraud his creditor, and that therefore the insolvent must have intended to defraud;

and again, " a man is presumed to know the condition
of his own business affairs, and therefore if, as a matter
of fact, he is insolvent, he must know of such insolvency."

Best, in his work on Evidence, section 307, speaking
of the changes which this subject of presumptions has
undergone in our legal history, says: " Certain presump-
tions which in earlier times were deemed absolute and
irrebuttable have, by the opinion of later judges, act-
ing on more enlarged experience, either been ranged
among *præsumptiones juris tantum,* or considered as pre-
sumptions of fact, to be made at the discretion of the
jury. On the whole, modern courts of justice are slow
to recognize presumptions as irrebuttable, and are dis-
posed rather to restrict than to extend their number.
To conclude a party by an arbitrary rule from adducing
evidence in his favor is an act which can only be justi-
fied by the clearest expediency and soundest policy; and
some presumptions of this class ought never to have
found their way into it."

According to the provisions of the Code of Civil Pro-
cedure, sections 1961, 1962, 1963, the foregoing pre-
sumptions are disputable presumptions, and may be
controverted by other evidence; and indeed the pre-
sumption that every man knows the condition of his
own business affairs has no standing in this case, for
the trial court has found as a matter of fact that " the
defendant Bray did not know that he was insolvent."
And not knowing his insolvency, how can it be pre-
sumed, from the existence of his insolvency, that he
intended to defraud? For no man can be presumed to
intend a consequence which he does not know, of which
he is ignorant, and which, therefore, he cannot contem-
plate.

The fraud in this case rests upon the insolvency of
the grantor; for while there is no allegation, proof, or
finding as to the value of the property conveyed, still, if

he was solvent, a gift of this character, in the absence of an actual fraudulent intent, would be upheld.

If defendant Bray did not know that he was insolvent, then he did not know that this property was required to pay his debts, and the finding of the court that he was ignorant of his insolvency is absolutely inconsistent with the presumption that he intended the consequences of an act, which consequences depended upon insolvency.

Appellant's counsel insist that a voluntary conveyance by an insolvent is void under all circumstances, and that the intent to defraud is conclusively presumed; if that be so, it must be by reason of some presumption of law; but if it be said that fraud can be conclusively presumed in any case, except as provided by section 3440 of the Civil Code, then fraud is again made a question of law, and this would amount to an abrogation of section 3442 of the Civil Code, which provides that "fraudulent intent is a question of fact," and would be creating a class of conclusive presumptions not recognized or justified by either section 3440 of the Civil Code or section 1962 of the Code of Civil Procedure.

As has been remarked at the inception of this opinion, the great number of cases from the courts of other states cited by appellant's counsel to support this contention will not be reviewed. Some of them directly sustain such position; others merely affirm the decisions of *nisi prius* courts that a gift by an insolvent is sufficient evidence to justify the setting aside of a conveyance by a creditor; others hold the insolvent guilty of a fraudulent intent as a matter of law; and many others are based upon the two presumptions heretofore referred to, and holding that such presumptions were conclusive presumptions, and that therefore the fraudulent intent necessarily resulted therefrom; and this was the reasoning adopted by this court in the case of *Swartz* v. *Hazlett*, 8 Cal. 118. The court held in that case that "every man must be

held to know the law and the facts regarding his own business"; in other words, if the debtor is insolvent, he is conclusively presumed to know that fact, and the necessary consequences of a transfer of his property being to delay and defraud his creditors, the fraudulent intent follows in all cases.

The important distinction between that case and the one at bar is, that in this case the lower court not only recognized the presumption that "every man is presumed to know the condition of his own affairs," as being rebuttable, but absolutely rebutted it by finding as a fact that "the defendant Bray did not know the condition of his own affairs, and did not know that he was insolvent."

In 1 Wharton on Contracts, section 377, subdivision 4, is used this language: "As a condition of fraudulent intention, insolvency *known to the grantor* must be shown. A party who believes himself to have the pecuniary ability to make a gift can make such gift without the risk of its being subsequently impeached, supposing his belief is not negligently adopted."

In the case of *Swartz* v. *Hazlett, supra,* this court really held that a transfer of property by a grantor who knew of his insolvency was conclusively fraudulent; and while we are not inclined to even adopt that view of the law under our statutes, yet from the reasoning of the court in that case, if there had been a finding as to the grantor's ignorance of his insolvency, it does not appear that the case could have been reversed, and judgment ordered for the plaintiff.

As we have already seen (*Emmal* v. *Webb,* 36 Cal. 204), if upon any conceivable theory the inference of fraudulent intent would be inconsistent with the fact of insolvency, then this court cannot find the intent as matter of law. Now, it appears from the record in this case, in addition to the findings already discussed, that the liabilities and assets of the defendant Bray approximated

three quarters of a million dollars, respectively; that he continued in business for years after these deeds were made, and before he made an assignment for the benefit of his creditors; and, in addition to these facts, we will suppose that he honestly believed at all times that he had ample property remaining to pay his debts after this property was transferred; and that the property transferred was of merely nominal value. A state of facts could be imagined even much more favorable to the grantor Bray than the foregoing, and which would be perfectly reconcilable with the fact of actual insolvency, and the absence of fraudulent intent at the time of the making of the conveyances. And conceding the trial court would be justified in drawing the inference of fraudulent intent from such a state of facts, this court would not and could not say that such intent would flow therefrom as a matter of law.

It is difficult to see how trivial gifts, made with fair, honest intentions, can be adjudged to have been made with a fraudulent intent, when intent is declared to be a matter of fact in all cases.

In the case of *Carpentier* v. *Mendenhall*, 28 Cal. 484, 87 Am. Dec. 135, it was held that a finding of a demand by one tenant in common, to be let into possession, and a refusal by his co-tenant, was not a finding of ouster. The court said: " The law will not presume from either the one or the other, nor from both combined, that there was an intent to oust. That intent must be established as a fact by the finding of the jury. Conversion is one of the points to be established in actions of trover; but it is settled that demand and refusal is not conversion, but only evidence of it for the consideration of the jury. In the absence of all explanation, the court would be justified in directing or advising the jury to infer a conversion, or an ouster in a case like the one at bar, from the fact of demand and refusal; but the inference is to be made by the jury, and not by the court."

There appears to be no reason why the legal principles declared by this court in the criminal case of *People* v. *Mize*, 80 Cal. 44, are not applicable here. The defendant was charged with an assault with intent to commit murder. It is a statutory offense, and the intent is the essential ingredient. The trial court gave the following instruction: "The jury are instructed that the natural and probable consequence of every act deliberately done by a person of sound mind is presumed to have been intended by the author of said act, and if the jury believe from the evidence, beyond a reasonable doubt, that the defendants, or either of them, did shoot at said Henry Coffey, as charged in the information, and that the natural and ordinary consequences of said shooting would be the death of said Henry Coffey, then the presumption of law is, that the defendant so shooting did shoot at said Coffey with intent to kill him."

This court said: "It is doubtless true that a man is presumed to have intended the immediate and natural consequences of his act, but when an act becomes criminal only when it has been performed with a particular intent, that intent must be alleged and proved. It is for the jury, under all the circumstances of the case, to say whether the intent required by the statute to constitute the offense existed in the mind of the defendant. This charge withdrew from the jury the consideration of the question whether the defendants intended to kill Coffey. The defendants claimed that they were acting in self-defense and upon real and apparent danger. . . . . To tell the jury, therefore, if they believed that the defendants had shot at Coffey, and that the natural and ordinary consequences of the shooting would be the death of Coffey, the law would presume them guilty of an intent to kill, was erroneous, because it entirely disregards the question whether the defendants acted in good faith and to defend themselves against real or apparent danger."

So in the case at bar, if a voluntary transfer by the defendant insolvent carries with it a conclusive fraudulent intent, the defendant would be precluded from showing his motives and good faith in making the conveyance, and the question of intent, which a jury may have been called to try, which in all cases is a question of fact, and which is *the fact* in the case, would be driven from the case by the court calling to its aid presumptions which, as we have already seen, are not only liable to attack, but are put to flight at the moment they come in contact with a substantial fact.

The case of *Hager* v. *Shindler*, 29 Cal. 58, 59, holds that insolvency is but a circumstance from which fraud may be inferred or argued; evidence of fraud, but not by any means conclusive or irrebuttable evidence. In that case the court said: " In a case like the one at bar, insolvency is not a fact of jurisdictional consequence, nor is it *per se* a condition of relief. . . . . A complaint framed for the purpose named, while stating that the deed was without consideration, should aid or help out the averment; not by averring insolvency, for that is but a *circumstance;* not by averring generally that the deed was fraudulent, for that is but a conclusion of law; but by averring the fact superadded by the statute, to wit, that it was made with 'intent to hinder, delay, or defraud creditors.' The state of the grantor's worldly affairs may be used as evidence to elucidate the intent, if disputed, but as matter of pleading it is not necessary that insolvency should be averred in the complaint, and for the obvious reason that the fact does not enter as a term into the legal proposition. A rich man may make a fraudulent deed as well as one who is insolvent."

The Civil Code provides that the mere want of consideration does not of itself render a conveyance fraudulent as to creditors, and considering this section in connection with the presumptions recognized by the court in *Swartz* v. *Hazlett*, 8 Cal. 118, the distinction

between sales for an inadequate consideration and voluntary conveyances is entirely imperceptible, and the question in both cases at once becomes one of intent to be decided from all the evidence in the case. The difference in these two classes of conveyances is only in degree; for as the grantor must, upon appellant's theory, be presumed to know his condition, and to know that the consideration is inadequate, and that he is thereby depriving his creditors of the portion of the "fund" which is represented by the difference between an adequate and an inadequate consideration, he must be presumed conclusively to intend to defraud them *pro tanto*, for the conveyance is voluntary to that extent; but *McFadden* v. *Mitchell*, 54 Cal. 629, holds that inadequacy of price and insolvency of the debtor are only circumstances more or less potential in the determination of fraud as a question of fact; and referring to certain instructions given by the trial court, Justice McKee says: "By these instructions the court, in effect, took away from the jury the consideration of fraudulent intent as a question of fact; and as they are contrary to the plain rule established by the code, the cause is remanded for a new trial."

Appellant's position in this case takes away from the jury the consideration of fraudulent intent as a question of fact.

In *Jamison* v. *King*, 50 Cal. 136, the court, speaking through Justice McKinstry, said: "Doubtless this concurrence of insolvency on the part of the assignor, and inadequacy of price, would be a circumstance strongly tending to establish fraud, but inadequacy or failure of consideration is not of itself sufficient, even as against the creditors of an insolvent assignor, to authorize a court to find fraud as a conclusion of law. By our statute it is provided: 'The question of fraudulent intent in all cases arising under the provisions of this act shall be *deemed* a question of *fact*, and not of law; nor shall any

conveyance or charge be adjudged fraudulent as against creditors or purchasers solely on the ground that it was not founded upon a valuable consideration.' In the case before us the district court did not find fraud as a fact, or as a conclusion of law, nor does the amended complaint allege it."

In *Miller* v. *Stewart*, 24 Cal. 504, the court uses this language: "Whether the transactions in question were entered into by the Millers with intent to hinder, delay, or defraud their creditors is a question which the statute leaves to the determination of the jury upon such evidence as may be presented for their consideration. The intent is expressly declared to be a question of fact, and must therefore be for the jury, and not the court. In the instruction above quoted the court, in effect, takes the question from the consideration of the jury, and assumes the decision thereof."

In *Harris* v. *Burns*, 50 Cal. 141, it appears the trial court instructed the jury that certain facts, if proven, were conclusive as to the intent of the assignor to hinder, delay, and defraud his creditors. In the opinion of this court, Wallace, C. J., says: "This instruction cannot be supported. The question of fraudulent intent is a question of fact; it is so declared by the statute. . . . . The instruction, in effect, took away from the jury the decision of the question of fact, and established the fraudulent intent by mere legal conclusion from an isolated circumstance. This we held erroneous in *Jamison* v. *King*, 50 Cal. 132."

This decision is not based upon the theory that the facts referred to by the trial court in the instruction were in themselves too weak to justify a conclusive presumption of a fraudulent intent, but it decides that the intent being a question of fact, such a presumption could not be indulged in under our statute.

If the legislature had intended a gift by an insolvent to constitute a constructive fraud or fraud in law, it was

easy to have said so. Instead of that, they expressly legislated away all the reasons upon which the decisions so holding profess to stand.

When the legislature did intend to preserve the doctrine of fraud in law, they did so in express language by section 3440 of the Civil Code, and then provided that in *all other cases* the question of fraudulent intent is one of fact, and not of law.

It is impossible to comprehend how any decision or series of decisions of other states can make the question of fraud in this state and in this character of action a question of law. No decision or series of decisions can repeal a statute.

Let the order be affirmed.

DE HAVEN, J., HARRISON, J., McFARLAND, J., and PATERSON, J., concurred.

BEATTY, C. J., concurring.—I concur. It does not seem possible to avoid the conclusion that the law of California on the subject of voluntary conveyances by insolvent debtors is such as in the opinion of Justice Garoutte it is declared to be. But I cannot refrain from expressing the belief that it is most unfortunate that the court should be forced to that conclusion.

When an insolvent debtor makes a gift of his property to a donee of his own selection, there can be but one result so far as his creditors are concerned; they are necessarily deprived of what is rightfully theirs, and the law ought to pronounce such a transaction *ipso facto* fraudulent and void as to them.

Our legislature, however, has deliberately chosen to make the rights of creditors in such case depend, not upon the proof of facts susceptible of demonstration, and from which the injury is a necessary result, but upon proof of the secret intent of the debtor; in other words, upon the whim of a jury.

Such a law invites fraud, puts a premium upon perjury, and multiplies fruitless litigation. It ought to be changed, but the legislature alone has the power to change it. In the mean time the courts should give the utmost force and effect to so much of the law for the protection of creditors as remains. There should be no hesitation in stating, and in everywhere insisting, upon the proposition that a voluntary conveyance by an insolvent debtor is *prima facie* proof of a fraudulent intent, which throws upon the donee the necessity of rebutting the inference of fraud, and it ought not to be held or intimated that such inference will be rebutted by the mere fact that the debtor was at the date of the conveyance ignorant or uncertain as to his insolvency. It ought to be made clear, on the contrary, that he believed, and had good reason to believe, that his property remaining after the conveyance would be amply sufficient to enable him to meet and discharge his obligations as they matured.

Rehearing denied.