(85 Misc. Rep. 184)

### WILLIAMS v. McCLAVE et al.

(Supreme Court, Special Term, New York County. April, 1914.)

1. CORPORATIONS (§ 542*)—FRAUDULENT ACTS—EXORBITANT SALARIES.

Where a corporation, organized by the heirs to take over the business of a person deceased and to assume all liabilities of such business, proposed to pay salaries which were large as compared with the earnings of the corporation and services rendered, such proposition was fraudulent as to creditors of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2154–2160; Dec. Dig. § 542.*]

2. CORPORATIONS (§ 61*)—FRAUDULENT ACTS—OVERCAPITALIZATION.

An overcapitalization of a corporation for the purpose of procuring credit is fraudulent.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 163; Dec. Dig. § 61.*]

3. CORPORATIONS (§ 547*)—BANKRUPTCY—ACCOUNTING BY OFFICERS—RIGHT OF ACTION.

Where those in control of a corporation vote exorbitant salaries and overcapitalize in fraud of creditors, a court of equity may grant relief with respect to such transactions in an action by a trustee in bankruptcy of the corporation for an accounting.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2178–2181; Dec. Dig. § 547.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Alexander S. Williams as trustee in bankruptcy, etc., against Charlotte McClave and others, for an accounting. Judgment for plaintiff.

Weed, Henry & Meyers, of New York City, for plaintiff.

Wilder, Ewen & Patterson, of New York City, for defendants,

COHALAN, J. [1, 2] Plaintiff, as trustee in bankruptcy, sues the defendants, as directors, officers, and stockholders of the McClave Lumber Company, for an accounting. The corporation was organized on the 9th day of May, 1907. It took over all the assets and property of the business theretofore conducted by John McClave, deceased, and it was to assume all the liabilities of that business. The value of the business was fixed at $150,000, and stock in that amount was issued, Charlotte L. McClave receiving 1,497 out of the 1,500 shares, and her three sons receiving one share each. It was agreed that Mrs. Mc-Clave was to receive a salary as the vice president of the corporation of $12,000 per year, for which she was to render no service. S. Wood McClave and John McClave were each to receive salaries of $5,200 per year, and Charles L. McClave was to get a salary of $3,900 per annum. While the property received was valued at $150,000, as a matter of fact the tangible gross assets transferred to the corporation amounted to $42,889.50, against which there were liabilities amounting to $29,954.42; this left a surplus of only $12,937.08 to apply against the $150,000 subscription price of the stock. The difference of $137,-062.92 apparently covered the value of the good will. However, the only testimony introduced concerning such value was that it amounted to the sum of $90,000. There was testimony that a parcel of real estate was also used to account for part of this balance. This property, however, was not owned by the transferror, but it was held by the executors of the estate of John McClave individually, and subsequently the corporation paid the sum of $800 for this realty. It was entered in the books as having a value of $13,600, against which there was a mortgage for $12,800. The company on the day of its incorporation rendered a statement to the credit department of the National Wholesale Lumber Dealers' Association, in which this real estate was listed in the sum of $35,000, against which was shown the mortgage for $12,800. This is the same property for which the company one year later paid $800, and which was entered on its books as having a gross value of only $13,600. Plaintiff asserts that the agreement, pursuant to which these transactions occurred, constituted a conspiracy to incorporate the business with a fictitious amount of capital stock, so that it should have a false basis of credit; that as a result of such incorporation S. Wood, John, Charles L. and Charlotte L. McClave should vote themselves excessive and unlawful amounts of salary. The executive officers, before incorporation, received salaries amounting to $13,000 per annum. When the corporation was formed it commenced under a salary burden of $26,300 per annum, of which $12,000 was paid to Charlotte L. McClave for no services rendered. At this time there were creditors in the amount of $29,952.42, with a surplus of assets over liabilities of $12,937.08. In the first year the corpora-

tion made $12,128.24, but in the same period its liabilities rose to $32,-497.73. In the year ending May 9, 1909, the losses amounted to $22,-270.21. Of the $26,300 in salaries paid in that year only about $4,000 were actually earned, and the balance was paid out of the capital assets of the corporation. The company continued to lose business until the liabilities rose to $71,015.04. Yet large salaries were paid and Christmas gifts were voted to all the McClaves in the sum of $100 each. I am constrained to hold, in view of the evidence adduced in this case,. that the proposition to pay these large salaries, irrespective of the earnings of the corporation, was fraudulent as against the corporation and its creditors, as was also the overcapitalization of the. company for the purpose of procuring credit. Two cases are distinctly in point. In Hazard v. Wight, 201 N. Y. 402, 94 N. E. 855, 856, the court said:

"It is the established law of this state that the capital of a corporation is regarded as a substitute for the personal liability which subsists in private ownerships and as a fund set apart and pledged for the payment of its debts. While a corporation is continuing its business, seeking credit and incurring liabilities, or while, after it has ceased to do business, it has outstanding liabilities, its directors or stockholders cannot lawfully, and with immunity from personal liability to the corporation, reduce the capital, which is the product of its capital stock as certified in its incorporating certificate, by appropriating or squandering it or giving it away."

In Ward v. City Trust Co., 192 N. Y. 74, 84 N. E. 585, 589, the court said:

"As was well said in the dissenting opinion below, to which we are greatly indebted: 'Primarily, the capital of a corporation is held for the protection of its creditors, and is impressed with a trust in their behalf, and the directors cannot lawfully, nor can the stockholders, divert the funds of a corporation to the individual use of its members, if thereby the capital is impaired and the corporation rendered insolvent.'"

[3] A court of equity has power to inquire into transactions such as are herein presented, and to grant relief with respect to them in an action for an accounting. Bosworth v. Allen, 168 N. Y. 157, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667. In this case the presumption of fraud arises without the imputation of moral turpitude. There is shown herein an example of filial care and affection which may have prompted the sons of John McClave to make a certain and substantial provision for his widow and their mother. This is enough to excite sympathy for her, especially since her property has been swept away. However, the principle is that persons must be just before they are generous, and that the debts of a corporation must be paid before gifts may be made. Bull v. Bray, 89 Cal. 286, 26 Pac. 873, 13 L. R. A. 576; Bosworth v. Allen, supra. It may be that some of the salaries paid were fair and reasonable, but that is a matter for determination on the acounting. Judgment is directed for the plaintiff, and the defendants are ordered to account with reference to the assets of the corporation.

Judgment for plaintiff.