## MERCANTILE TRUST CO. v. OLSAN et al.

(Circuit Court of Appeals, Eighth Circuit. July 9, 1923.)

No. 6201.

1. **Appeal and error** ⊙═⇒1001(1)—**Where verdict was rendered under correct Instructions and is supported by evidence judgment must be affirmed.**

Where the jury were correctly instructed, and their verdict was supported by the evidence, the judgment cannot be reversed under Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246).

2. **Fraudulent conveyances** ⊙═⇒57(3)—**Stockholders In bank may lawfully pledge property to secure its indebtedness.**

A stockholder in a bank may lawfully pledge property to secure its indebtedness, where he acts in good faith for the protection of his interests as stockholder, by preventing closing of the bank in insolvency, though the pledge in fact renders him individually insolvent.

3. **Fraudulent conveyances** ⊙═⇒308(1)—**Fraudulent intent question for jury under statute.**

Under Rev. Laws Okl. 1910, §§ 2898, 2899, 2901, which permit an insolvent debtor in good faith to prefer creditors and make the question of fraudulent intent one of fact, whether a pledge of property to secure a debt was fraudulent is a question for the jury.

4. **Statutes** ⊙═⇒226—**Construction of statute before adoption by state is part of statute.**

Construction of a statute before its adoption by another state is a part of the statute adopted, but a construction in another state after its adoption is not of such conclusive effect.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Action at law by the Mercantile Trust Company against J. Olsan and others. Judgment for defendants, garnishees, and plaintiff brings error. Affirmed.

For convenience the parties will be referred to as they appeared in the court below, the plaintiff in error as the plaintiff and the defendants in error as the garnishees. The facts are that the plaintiff recovered a judgment in the court below against J. Olsan, B. Olsan, and Louis Olsan, a copartnership doing business as Olsan Bros., and another corporation, not a party in this proceeding, for $63,554.39, which is unpaid. On July 27, 1920, writs of garnishment were sued out by the plaintiff against L. H. Leonard, W. E. Brown, Exchange National Bank of Tulsa, Okl., and the American National Bank of Tulsa, and duly served on them. Answers were filed by all the garnishees, denying any indebtedness to or possession of any property belonging to the judgment debtors, the Olsan Bros. The plaintiff elected to take issue on the answers of the garnishees. There was a trial to a jury, and a verdict in favor of the garnishees, on which judgment was entered. To reverse this judgment this writ of error is prosecuted.

The facts, briefly stated, are: That the Olsans were stockholders of the American National Bank of Tulsa, hereafter referred to as the American Bank, holding 55 per cent. of its capital stock, which was $100,000. That Joseph Olsan was its president, and the other brothers directors with him of it. That on April 9, 1920, a national bank examiner, after the examination of the bank, ordered that notes and other securities, aggregating $281.894.29, a part of which was the individual indebtedness of Olsan Bros., be taken up and the money put into the bank in place of them, or that the same be properly secured or guaranteed; otherwise, the bank would be closed. The Olsan

Bros. were then the owners of 141,250 shares of the Magna Oil & Refining Company, hereafter referred to as the Magna Company, and to avoid paying this large sum of $281,894.29 in cash, which they were unable to do, they being the managing officers of the bank, and to avoid the closing of the bank and the appointment of a receiver therefor, entered into an agreement with the bank, whereby they guaranteed the payment of these notes and to secure the guaranty pledged the Magna shares, by delivering 40,250 shares to the garnishee Leonard, and 61,000 shares to the garnishee W. E. Brown, the latter 61,000 shares being subject to a prior pledge of $85,000, with power to the trustees to sell said stock at public sale, in the event said notes, ordered to be paid off, are not paid, one half within 60 days and the other half within 4 months, the proceeds to be applied to the payment of the guaranteed notes. The value of the Magna shares was estimated to be $4 a share, and the agreement contained a stipulation that the Olsans may withdraw any of said shares of stock upon payment to the trustees of $4 for each share withdrawn. That on April 13, 1920, after the above-mentioned pledges, the bank examiner was still of the opinion that the bank was in a failing condition, and notified the Olsans, as managing officers thereof, that unless they arranged for some other bank, to be approved by him, to take over the assets of the bank and protect its depositors, it would have to be closed. Thereupon the Olsans pledged 40,000 additional shares of the capital stock of the Magna Company to secure the payment of all deposits held by the American Bank, by delivering them to the garnishee Leonard for the purposes set out in the agreement of April 9, 1920. These 40,000 shares of stock were subject to an indebtedness of $100,000 due from the Olsans to the Fidelity National Bank & Trust Company, of Kansas City, Mo., to whom they had been pledged.

This last agreement and pledge was made to secure another bank to assume all the liabilities of the American Bank, by taking over all its assets, including the pledged shares of stock of the Magna Company. Of the $281,894.29 classed by the bank examiner as worthless, $130,000 consisted of notes and securities which had been received by the American Bank from the Citizens' Bank, owned by the Olsans, and which it had taken over. As none of the pledged shares were redeemed by the Olsans at $4 a share, as provided in the first agreement, the trustees sold them for $3 a share. This sale is not questioned. After paying off the prior liens or pledges, there was realized from the sale of the shares of the Magna Company the sum of $174,495.41, which was paid to the Exchange National Bank, after the service of the garnishments.

On April 15, 1920, the bank examiner closed the bank, claiming that it was insolvent. Thereupon on the same day the American Bank and the Exchange National Bank entered into an agreement whereby the Exchange Bank assumed the liabilities of the American Bank set out in the agreement, in consideration of all the assets of the American Bank being transferred to it, including the guaranty and securities pledged by the Olsans, hereinbefore set forth. For its services in winding up the American Bank and assuming its liabilities, the Exchange Bank was to receive a reasonable compensation; but it not only has received no compensation whatever, but, on the contrary, at the time of the trial of this cause, it had paid off $282,064.77 more than it had realized from the assets of the American Bank, including the moneys received from the sale of the Magna Company stock by the trustees. Of the assets received, $148,509.11 had to be charged off as worthless. The uncollected assets still held by the Exchange Bank are equal to this balance still due it, but many of them are of doubtful value.

Samuel A. Mitchell, of St. Louis, Mo. (Elmer H. Grimm, of St. Louis, Mo., and Roger S. Sherman, A. A. Davidson, Grey Moore, and Preston C. West, all of Tulsa, Okl., on the brief), for plaintiff in error.

Charles E. Bush, of Tulsa, Okl. (John Y. Murry and A. J. Biddison, both of Tulsa, Okl., on the brief), for defendants in error.

Before LEWIS and KENYON, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge (after stating the facts as above). [1] Although there are a number of assignments of error, there is in fact only one issue of law involved, namely: Did the court err in instructing the jury "that these men (referring to the Olsan Bros.) as stockholders in said bank, had the right to guarantee the paper to protect their interests in the bank"? If the court committed no error in this part of the charge, and the evidence justifies it, the verdict was right, and the judgment must be affirmed, in view of section 269, Judicial Code, as amended by the Act of February 26, 1919, 40 Stat. 1181 (section 1246, U. S. Comp. St. Ann. Supp. 1919), which provides:

"On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal. the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

See Horning v. District of Columbia, 254 U. S. 135, 139, 41 Sup. Ct. 53, 65 L. Ed. 185; Harrington v. United States (8th C. C. A.) 267 Fed. 97; Wright v. United States ex rel. (4th C. C. A.) 277 Fed. 768: United Verde Extension Mining Co. v. Littlejohn (9th C. C. A.) 279 Fed. 223; Hines v. Martin (5th C. C. A.) 286 Fed. 653.

[2] It may be conceded that, when the Olsans transferred their Magna shares for the purpose of guaranteeing the payment of the liabilities of the American Bank, they became insolvent; still, if they acted in good faith, under an honest belief that, by this act, they could not only save a part of their holdings in the bank, and escape the liability imposed by the National Banking Act on shareholders of an insolvent bank, but discharge a moral liability to the depositors of the bank, and also escape the liability of managers of the bank in making these bad loans, which caused its insolvency, it certainly cannot be held as a matter of law, as insisted on by counsel of plaintiff, that their acts were fraudulent. That they acted in good faith, without any intent to defraud other creditors is shown by the practically undisputed evidence. The numerous authorities cited by counsel, as to a surrender by an insolvent debtor of all his property for the benefit of some creditors, have no application to the facts in the instant case.

[3] Under the laws of Oklahoma, an insolvent debtor may lawfully prefer some of his creditors. Section 2901, Rev. Laws of Oklahoma, 1910. Besides the law of the state of Oklahoma (Rev. Laws of Oklahoma, 1910) provides:

"Sec. 2898. *Fraud Avoided, How.* A creditor can avoid the act or obligation of his debtor for fraud only where the fraud obstructs the enforcement, by legal process, of his right to take the property affected by the transfer or obligation.

"Sec. 2899. *Fraudulent Intent a Question of Fact.* In all cases arising under the following section, or under the provisions of this chapter, except as otherwise provided in the second preceding section, the question of fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration."

[4] These provisions were originally enacted as a part of the Civil Code of California, later taken from that state by the state of Minnesota, still later by the territory of Dakota, and the states of North and South Dakota, after the admission of those states, and finally enacted by the state of Oklahoma. The Supreme Courts of California and Minnesota had, long before the enactment of these acts by Oklahoma, construed them, and have uniformly held that under a statute like section 2899 the question of fraud must be submitted to the jury and cannot be determined as a question of law by the court. Miller v. Stewart, 24 Cal. 504; Janison v. King, 50 Cal. 132; Bull v. Bray, 89 Cal. 286, 26 Pac. 873, 13 L. R. A. 576; Knox v. Moses, 104 Cal. 502, 38 Pac. 318; Greenleaf v. Edes, 2 Minn. 265 (Gil. 226); Truitt Bros. v. Caldwell, 3 Minn. 364 (Gil. 257), 74 Am. Dec. 764; Hathaway v. Brown, 18 Minn. 414 (Gil. 373); Filley v. Register, 4 Minn. 391 (Gil. 296), 77 Am. Dec. 522. This construction of a statute before the adoption thereof by another state is a part of the statute. Willis v. Eastern Trust & Banking Co., 169 U. S. 295, 18 Sup. Ct. 347, 42 L. Ed. 752; J. M. Robertson & Co. v. Bilt, 100 Fed. 718, 40 C. C. A. 664, affirmed 187 U. S. 41, 23 Sup. Ct. 16, 47 L. Ed. 65; Blaylock v. Town of Muskogee, 117 Fed. 125, 54 C. C. A. 639. Counsel for plaintiff relies on Hall v. Feeney, 22 S. D. 541, 118 N. W. 1038, 21 L. R. A. (N. S.) 513, construing a statute like this. That case was decided after the adoption of it by Oklahoma. Such a construction has not the same conclusive effect as a construction before the adoption.

Besides, the facts in that case were so different from those in the instant case that it can have no bearing whatever on it. The undisputed evidence shows that the debtor, while insolvent, conveyed a stock of goods to his son; that the only alleged consideration was that the son was to pay some of his debts, but was in fact in secret trust for himself, as the money realized by the son from the daily sales of the merchandise was not paid to a single creditor, but to the father; that there was no assumption by the son of any of the debts, which it was claimed the son was to pay, so that no creditor of the father could sue him; that the father had divested himself of all his property, which creditors could seize under execution. Upon these facts it may be conceded that, there being no disputed facts, it was proper for the court to direct a verdict.

For the court below to have directed a verdict for plaintiff, as requested and now insisted on, would have been clearly in violation of the law of Oklahoma. A careful examination of the evidence satisfies that there was substantial evidence requiring the submission of the case to the jury under the laws of that state, and that upon the entire evidence the verdict of the jury was right, and that the court committed no prejudicial error, which would warrant this court to reverse the judgment in view of the act of Congress amending section 269 of the Judicial Code.

The judgment is affirmed.