### HESSIAN v. PATTEN et al.

(Circuit Court of Appeals, Eighth Circuit. July 5, 1907.)

No. 2,503.

1. FRAUDULENT CONVEYANCES—VOLUNTARY DEED.

A voluntary conveyance by an insolvent grantor is fraudulent in itself because it cannot be made without hindering and defrauding his creditors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, §§ 138, 139, 188.]

2. SAME—WHEN VOLUNTARY DEED BY PARENT TO CHILD IS NOT FRAUDULENT.

A voluntary conveyance by a solvent father to his child is not necessarily voidable by his existing creditors, and it is valid against subsequent creditors in the absence of evidence that it was made with intent to defraud them.

If the provision be reasonable, if it leave in the hands of the grantor ample property to pay his existing debts, and if there be no intent to defraud existing or subsequent creditors, it may be sustained.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, §§ 141, 144, 145.]

3. SAME—WANT OF CONSIDERATION INSUFFICIENT TO AVOID.

The want of consideration is only a circumstance insufficient in itself to prove a fraudulent intent, but from which and other circumstances such an intent may be inferred.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, §§ 186, 189.]

4. SAME—DEED FOR USE OF GRANTOR NOT VOIDABLE IF RESERVATION INCI-
DENTAL AND PARTIAL.

The rule that, a conveyance in trust for the use of the person making the same is voidable by creditors of the grantor is inapplicable to a deed which is made primarily and principally for the use of the grantee, and in which the reservation for the grantor is secondary and partial, as in the case of a conveyance by an aged man of a lot and building worth $9,000 and a reservation in the deed of possession of the property during his life.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, § 352.]

(Syllabus by the Court.)

Appeal from the District Court of the United States for the District of Minnesota.

Edmund S. Durment and Benjamin Taylor (Albert R. Moore, on the brief), for appellant.

A. R. Pfau, Jr. (A. R. Pfau, Sr., M. J. Severance, and Ora J. Parker, on the brief), for appellees.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge. This is an appeal from a decree which dismissed the bill of Thomas Hessian, trustee in bankruptcy of the property of William H. Patten, and of the property of William A. Patten, his son, who were copartners, to avoid a deed of a lot and a store building thereon made by William H. Patten to his daughter, Mrs. Lodusky J. Taylor on February 15, 1902. William H. Patten and William A. Patten were adjudged bankrupts as individuals and as copartners on November 20, 1903. The deed to Mrs. Taylor was recorded on August 3, 1903, within four months prior to the adjudication. Counsel for the appellant contend that this deed was never delivered; that, if it was, the time of its delivery was not before August 3, 1903; that it was a voluntary deed; that it was made with intent to defraud the creditors of the grantor and those who might thereafter become his creditors; and that it was not intended to take effect until the grantor died, so that it was a testamentary disposition, and not a conveyance of the property. If these claims are well founded, the deed must be avoided, and the question is whether or not the evidence sustains them. There is little controversy in the testimony and the issues involve the effect, rather than the existence, of the following facts, which are fairly established by the proof.

William H. Patten had been an upright and successful business man. In 1893 he and his son owned property worth about $63,000, which they invested in the business of their partnership, which subsequently became the business of banking. William H. Patten owned a portion of this partnership property which was worth $33,000, and he also owned a homestead worth about $6,000, the lot and store building here in controversy which were worth about $9,000, and other individual property. He owed nothing, was 66 years of age, and from that time until he died he intrusted the business of the partnership to his son and took no active part in it. He had a

wife and three children, his son, Mrs. Taylor and Mrs. Edna N. Budtke. His physical strength was not great, and he was subject to attacks of illness which threatened his death. There was an understanding between the parents and the children that at his death this store building and lot should pass to Mrs. Taylor and the homestead to Mrs. Budtke. In 1896 Mr. Patten was seriously ill, and they thought that his wife would outlive him, and thereupon he caused these two pieces of property to be conveyed to her. But in September, 1900, she died intestate, and the property descended to Mr. Patten and his three children. In the autumn of 1901 the children conveyed their interest in these two tracts of property to their father by a quitclaim deed, which was recorded on December 14, 1901. Mrs. Taylor and Mrs. Budtke made these deeds so that their father could, and with the understanding that he would, convey the store property to the former and the homestead to the latter; but there was no conversation or agreement between them and their father to this effect. In February, 1902, Mr. Patten was again seriously ill at Mrs. Taylor's house and was unable to walk. He called a notary public who drew his will, in which this store property and the homestead were not mentioned, and two deeds; one of the store property to Mrs. Taylor subject to a reservation of the possession thereof during his natural life, and another of the homestead to Mrs. Budtke. He executed these deeds, handed them to Mrs. Taylor, and said, "Here is your deed for the store, and the home for Edna." Mrs. Taylor put them in a desk where Mr. Patten kept his papers and where Mrs. Taylor kept hers, and after he recovered from his illness he took out of this desk and carried away to his home the will and his insurance papers, but left the deeds. Mr. Patten remained in the possession and control of the store property. Two or three months after he made the deeds, he inserted in the deed to Mrs. Taylor without her knowledge a provision that his son should collect the rents from and pay the taxes upon the store property for five years. Mrs. Taylor discovered this interlineation before she recorded her deed, but made no objection. In August, 1903, Mr. Patten was again in failing health. Mrs. Taylor was going away from the city of Le Sueur where they lived. She feared his death and subsequent probate proceedings, and she recorded her deed. The bank which the partnership was operating failed about the middle of October, 1903. About the 20th of that month Mr. Patten furnished a room in the store building, slept there for some months, and claimed the lot and store building as his homestead. In his schedules in bankruptcy, which were verified on November 23, 1903, he specified this property as a part of his individual estate and claimed its exemption as a homestead, and on October 26, 1903, he made a quitclaim deed of it to Mrs. Taylor. Neither Mrs. Taylor nor Mr. Patten ever had any actual intent by the use of his deed of 1902 to hinder, delay, or defraud any of his existing or subsequent creditors. They both believed until after the deeds were recorded in August, 1903, that he had sufficient property aside from the lands conveyed by these deeds to pay all his debts, and neither of them had any notice of any facts which would have led a person of reasonable prudence in their respective situations to

discover the contrary. .In February, 1902, when the deeds were made, the copartnership and Mr. Patten were solvent. In August, 1903, when this deed was recorded, they were insolvent. There remained unpaid about $1,500 that was owing to those who were creditors of the partnership when the deed was made, and there are subsequent creditors who relied upon the ownership of this property by Mr. Patten in their dealings with the partnership; but there is no evidence that any of them ever received or relied upon any statements that he was the owner, made by Mr. Patten after the date of the deed, February 15, 1902. There is evidence of other facts, but of no others which change the legal effect of those which have been recited. Upon this state of facts the court below dismissed the bill.

The first question which this evidence presents is: Was the deed of February 15, 1902, delivered on that day, and did it convey the property? The claim of this property as his homestead in his schedules in bankruptcy and otherwise in October or November, 1903, his quitclaim deed of it to Mrs. Taylor on October 26th in that year, his interlineation in his deed of February 15, 1902, and the understanding of the father and the children that Mrs. Taylor should have the property at his death, are facts and circumstances indicating that Mr. Patten and Mrs. Taylor did not intend that this property should be conveyed to her in 1902, which have received careful consideration. But the countervailing facts that the actual possession of the deed was given to the grantee on the day of its date by her father with the remark, "Here is your deed for the store," that when he left her home to go to his own after he recovered from his illness, he took his will and his insurance papers which were in the desk with the deed, but left the latter, that the deed ever after February 15, 1902, was in the dominion and possession of the grantee except during the brief time when Mr. Patten made the interlineation without her knowledge, and that he testified that he intended that the deed should take effect on February 15, 1902, outweigh all other evidence and considerations in this case and convince that the deed was delivered on the day of its date, and that the parties to it intended it to evidence, and that it did constitute, a conveyance of this property to Mrs. Taylor on that day, and not a testamentary disposition of it.

Whether the conveyance was voluntary or was made in consideration of the previous deeds from the children to Mr. Patten may be a debatable question, and it is unnecessary to decide it.

A voluntary conveyance by an insolvent grantor is fraudulent in itself, because such a deed cannot be made without hindering and defrauding creditors. Knatvold v. Wilkinson, 83 Minn. 265, 267, 86 N. W. 99; Henry v. Hinman, 25 Minn. 199; McCord v. Knowlton, 79 Minn. 299, 82 N. W. 589; Kehr v. Smith, 20 Wall. 31, 35, 22 L. Ed. 313.

But a voluntary conveyance by a solvent grantor to his child is not necessarily voidable by the grantor's existing creditors, and it is valid against subsequent creditors in the absence of evidence that it was made with intent to defraud them. There is a statute in the state of Minnesota, which relates to this subject, and which reads:

"The question of fraudulent intent, in all cases arising under this subdivision, shall be deemed a question of fact, and not of law; and no conveyance or charge shall be adjudged fraudulent as against creditors solely on the ground that it was not founded on a valuable consideration." Rev. Laws Minn. 1905, § 3500.

The want of a consideration is only a circumstance in itself insufficient to prove a fraudulent intent, but from which and other circumstances such an intent may be inferred. If the provision for the child be reasonable, not disproportionate to the means of the grantor, if he retain ample property to pay his existing debts, and if there be no actual intent to hinder or defraud creditors, a conveyance may be sustained, though voluntary. Salmon v. Bennett, 1 Conn. 525, 547–549, 7 Am. Dec. 237; Kehr v. Smith, 20 Wall. 31, 35, 22 L. Ed. 313; Lloyd v. Fulton, 91 U. S. 479, 485, 23 L. Ed. 363; Jones v. Clifton, 101 U. S. 225, 227, 25 L. Ed. 908; Herring v. Richards (D. C.) 3 Fed. 439, 443; Filley v. Register, 4 Minn. 391 (Gil. 296, 300, 309), 77 Am. Dec. 522; Young v. Heermans, 66 N. Y. 374, 381. The evidence in this case is convincing that the conveyance by Mr. Patten to his daughter was not disproportionate to his means, that he retained property sufficient to pay his then existing debts, and that neither he nor his daughter ever had any intent to defraud his creditors.

But counsel argue that the provision in the deed that the grantor should hold the possession of the property during his natural life, and the facts that he retained possession and dominion over it, and that the deed was not recorded until August, 1903, bring it under the ban of the rule of law that a conveyance in trust for the use of the person making the same is void. This rule, however, is inapplicable to conveyances made primarily and principally for the use of the grantee, in which the reservation to the grantor is secondary and partial. Camp v. Thompson, 25 Minn. 175, 180; Curtis v. Leavitt, 15 N. Y. 9, 121, 122. The main purpose and effect of the deed under consideration was to convey the property for the use of the grantee. The reservation of the possession for the use of the grantor was incidental and partial, and it failed to subject the conveyance to the rule here invoked. The retention of the dominion and possession by the grantor was in accord with the express terms of the deed, and the evidence convinces that this deed was not withheld from the record by either the grantor or the grantee with any intent to mislead or deceive the creditors of the former.

A careful consideration of all the evidence in this case has forced our minds to the conclusion that the deed to Mrs. Taylor was neither made nor withheld from the record with the intent either in fact or in law to hinder or defraud the creditors of the grantor, and the decree below is accordingly affirmed.