L. C. JOHNSON, as Administrator of the Estate of John Rutherford, Deceased, Appellant, v. MARY RUTHERFORD.

L. C. JOHNSON, as Administrator of the Estate of John Rutherford, Deceased, v. MARY RUTHERFORD, Appellant.

(147 N. W. 390.)

This is a creditors' bill in equity to obtain a decree that the real and personal

property formerly belonging to John Rutherford, deceased (transferred by deeds and bill of sale to his wife one day before he died), is a part of the decedent's estate and subject to administration, and that the transfers were made in fraud of creditors. *Held:*

**Transfers — without valuable consideration — to avoid administration — grantor — property — estate — insolvent — debts — fraud of creditors.**

1. Where such transfers are made without valuable consideration, and to avoid administration, though with no specific intent in the grantor or grantee to defraud the grantor's creditors, but when the . conveyances devested the grantor of all his property, rendered his estate insolvent, and operated to defeat the collection of debts owing by decedent, the conveyances must be held to have been made in fraud of creditors.

**Fraudulent conveyance — title in grantee — administration — subject to — debts of deceased — liable for.**

2. A fraudulent conveyance vests title in the grantee, who takes the property subject to its being charged by administration proceedings, aided by an equitable action as this, with any debts owing by the estate, for the payment of which the property or its proceeds may be taken.

**Property — resort to personalty — deficiency — resort to realty.**

3. In taking the property for such purposes, resort should be had first to the personalty, and then, for any deficiency unpaid, to the realty.

**Decree in equity — property — subject to payment of debts — claimant — estate — insolvency of — transfer — fraud of creditors — debts — validity.**

4. The decree in equity, holding property thus subject to payment of debts, to be established by county court administration, should designate the claimant, and adjudge that his claim has been approved by the county court for a stated amount, that the plaintiff suing has been appointed the personal representative and maintains the action for the benefit of said claimant, the facts concerning the transfer and the insolvency thereafter of the grantor and his estate, that the transfer was in fraud of creditors, the identity of the property conveyed, and the order in which it may be resorted to and applied, and that the same is subject to the payment of the approved claim exhibited in the creditors' bill, with administration costs of its collection; and by interlocutory decree require and direct the property be held *in statu quo* subject to the final determination of the debt in the course of administration, whenever it shall appear that the grantee in good faith desires to litigate in probate court the validity of the debt on which the claim is asserted. After the final determination of the county court on the validity of the debt, a final decree in this equitable action may be entered, dealing with both the property and the costs of this action on trial and on this appeal.

**Indebtedness — question of — for county court — judgment.**

5. The question of the indebtedness of the estate to the claimant, and the

amount of such indebtedness, if any, cannot be an issue in the equitable action; and the judgment in such action should not pass upon such question, or find such indebtedness, but leave that for the determination of .the county court. or the district court on appeal taken.

**County court — record of — administration — appointment and qualification — pleading — allegations necessary.**

6. The county court's record of the appointment of the administrator, and its approval of the creditor's claim against the estate, so far as the district court action is concerned, incontestably establishes the power of the plaintiff to sue, and that there is prima facie a debt owing · by the estate, and its amount, for which the property shall respond, if it be determined to have been conveyed in fraud of creditors and the estate be insolvent.

**Decedent — estate — transfer — in fraud of creditors — administration — petition by creditor — claim of — property — subject to administration.**

7. Where the decedent leaves no estate, but leaves debts unpaid, and. where property has been transferred, shortly before his death, by fraudulent conveyances, to avoid payment of claims or administration of his estate, and where no personal representative has been appointed, the order of proceedings to enforce payment of claims is by statute intended to be: (a) A petition by the creditor for administration, reciting his claim to establish his interest or right to petition; (b) the appointment thereon of an administrator; (c) giving of usual notice by the administrator to present claims within the statutory period; (d) presentment by the creditor who petitioned for administration, of his verified claim to the administrator, and its allowance and approval by the representative and the court; (e) suit by the administrator to recover, under § 8173, for the benefit of those creditors whose claims shall be approved by the county judge in usual course, the property so fraudulently conveyed, and which may thus be held subject to administration for the payment of claims to be established in county court.

**Demurrer — district court — jurisdiction —payment of claim — evidence — claim approved by county court — prima facie case — equitable action — conclusive upon district court.**

8. The district court sustained a demurrer to a plea of payment, and rejected evidence tending to prove full payment of the claim approved by the county court and as such the basis of this action, it being the sole claim made against the estate in administration proceedings. *Held* proper, the district court having no jurisdiction to entertain a joinder of issue, or receive evidence thereon of payment. The approval by the county court, even though *ex parte*, is a prima facie determination sufficient under the statute to furnish a basis for the equitable action, and as such conclusive upon the district court upon the question of debt.

**Constitution — county courts — exclusive jurisdiction — validity of claims — estates.**

9. By § 111 of the state Constitution the county court "shall have exclusive original jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, the settlement of the accounts of executors, administrators, and guardians." This constitutional provision confers upon the county court exclusive original jurisdiction to determine and enter judgment upon the validity of claims against estates of decedents, and the district court has no jurisdiction to pass upon the validity of the debt of estates to claimants other than appellate jurisdiction, and therefore the district court in the equitable action has no jurisdiction to determine or pass upon the validity of the claim in question.

**Administrator — appointment of — transfer of property — grantee — fraud — claims against estate — approval.**

10. Neither the appointment of the administrator, nor the approval by the county judge of claimant's claim against the estate, affords an opportunity to litigate the validity of his claim, or constitutes, as against this grantee of property fraudulently conveyed, an adjudication of the validity of the debt, even though the grantee participated in a hearing had for such purpose. The law does not contemplate that the validity of claims shall be litigated, or preference in establishment of claims afforded, merely on hearing on the petition for administration, or on proceedings had on approval of the claim. The approval of a claim on its presentation is an *ex parte* matter affording no opportunity to contest, and from which approval there is no appeal allowed.

**Probate procedure — claims — validity of — hearing — appeal — district court — order judgment.**

11. Probate procedure contemplates that claims allowed by the administrator and the county court shall not be fully litigated on presentation for such allowance, but the validity of a claim so allowed may be tried on the hearing to be had on the personal representative's accounting, or upon his application to sell property, had on notice, from any of which an appeal from the judgment passed by the probate court may be taken, on the items of the account thus litigated, to the district court, and there retried. An appeal is also allowed from a claim established in county court by the confirmation of the report of a referee appointed by consent, and from which an appeal to the district court may be taken. The district court, on such appeal, acts as an appellate tribunal, with judgment to be entered under its order in the probate court.

**Equitable action — ancillary to administration in county court — defense of payment — interposed in county court — res judicata.**

12. This equitable action in district court is but ancillary to and in aid of the administration proceedings in county court, wherein the grantee may hereafter, in the course of administration, interpose the defense of payment sought

to be urged in this district court action, and upon which the judgment herein entered is not *res judicata* as to further litigation of the debt in county court.

**Trial on merits — accounting — property — grantee — execution — county court — trial judgment.**

13. Pending trial on the merits of the claim, that may be had on an accounting of the administrator, under § 8123, before he shall take charge of any property in the grantee's possession, the court properly stayed execution of judgment or sale of property until final judgment in the county court as to the validity of claimant's claim against the estate.

Opinion filed April 16, 1914. Opinion on petition for rehearing filed May 25, 1914.

From a judgment of the district court of Cass county, *Pollock*, J., both the administrator and Mary Rutherford separately appeal, and trial *de novo* is had.

Modified and affirmed.

*M. A. Hildreth,* for appellant Mary Rutherford.

Fraudulent intent must be alleged and proved in an action to set aside a deed or gift as a fraud upon creditors; and such an intent is a question of *fact.* Windhaus v. Bootz, 92 Cal. 617, 28 Pac. 557; Emmons v. Barton, 109 Cal. 662, 42 Pac. 303; Murphy v. Clayton, 114 Cal. 526, 43 Pac. 613, 46 Pac. 460; Ackerman v. Merle, 137 Cal. 157, 69 Pac. 982; Aigeltinger v. Einstein, 143 Cal. 614, 101 Am. St. Rep. 131, 77 Pac. 669; Dalrymple v. Security Loan & T. Co. 9 N. D. 307, 83 N. W. 245; Stevens v. Meyers, 14 N. D. 398, 104 N. W. 529.

There must be allegations and proof that the personal property was transferred as a *gift* in view of death. Rev. Codes 1905, §§ 4993, 5000.

Plaintiff's right to maintain this action as administrator must rest upon the statute, as it is purely a statutory proceeding. Janes v. Throckmorton, 57 Cal. 368; San Francisco v. Pennie, 93 Cal. 465, 29 Pac. 66; Field v. Andrada, 106 Cal. 107, 39 Pac. 323; Murphy v. Clayton, 114 Cal. 526, 43 Pac. 613, 46 Pac. 460; Sayward v. Houghton, 119 Cal. 545, 51 Pac. 853, 52 Pac. 44.

Plaintiff must stand or fall on the complaint and proof as made. Long v. Long, 142 N. Y. 552, 37 N. E. 486; Murphy v. Clayton, 113 Cal. 157, 45 Pac. 267, 114 Cal. 536, 43 Pac. 613, 46 Pac. 460;

Baker v. Kingsland, 10 Paige, 366; Emmons v. Barton, 109 Cal. 663, 42 Pac. 303; Harris v. Harris, 59 Cal. 623; Eberstein v. Oswalt, 47 Mich. 254, 10 N. W. 360; Hogan v. Kavanaugh, 138 N. Y. 417, 34 N. E. 292; Patteson v. Ongley Electric Co. 87 Hun, 462, 34 N. Y. Supp. 209; Dunning v. Dunning, 82 Hun, 462, 31 N. Y. Supp. 719; Cory v. Leonard, 56 N. Y. 503; Platt v. Platt, 105 N. Y. 489, 12 N. E. 22; Kingsland v. Murray, 133 N. Y. 170, 30 N. E. 845; Reeves v. Howard, 118 Iowa, 121, 91 N. W. 896; Basket v. Hassell, 107 U. S. 602, 27 L. ed. 500, 2 Sup. Ct. Rep. 415.

The heirs and next of kin of the deceased should have been made parties defendant, and plaintiff's failure to do so is fatal. Butts v. Genung, 5 Paige, 254; Mooers v. White, 6 Johns Ch. 360, and cases cited in notes; Thompson v. Brown, 4 Johns. Ch. 619; Webb v. Atkinson, 122 N. C. 683, 29 S. E. 949, 3 Prob. Rep. Anno. 513; Mayer v. Gilligan, 2 N. Y. S. R. 702; Haines v. Haines, 69 N. J. L. 39, 54 Atl. 401; Holmes v. Bush, 35 Hun, 639.

*W. J. Courtney,* for Administrator on cross appeal.

A creditor of an intestate decedent has the right to administer the estate if no administration is granted to those prior in right of order. Rev. Codes 1905, § 8022.

The result, where one conveys all his property in anticipation of death and to avoid administration, is to avoid the right of the creditor to have the estate administered. Rev. Codes 1905, § 8173.

It is not necessary to show that it was the purpose of decedent to place his property beyond the reach of his creditors. The transfer itself and alone is sufficient. Walker v. Cady, 106 Mich. 21, 63 N. W. 1005; Early v. Owens, 68 Ala. 174; McKeown v. Allen, 37 Fla. 490, 20 So. 558; Whitehouse v. Bolster, 95 Me. 458, 50 Atl. 243; 2 Bigelow, Fr. pp. 30, 39.

The honest intentions of the grantor are immaterial. If his acts in effect hinder and delay his creditors, the intent is sufficiently established. The standard is external, not internal in the grantor's mind. 2 Bigelow, Fr. pp. 80–83, 173, 178, 347, 375.

In voluntary conveyances, the intention to defraud, required by the statutes, does not necessitate a bad motive or a dishonest purpose. These may be wanting, and the conveyance still be fraudulent. 14 Am. & Eng. Enc. Law, 301, notes 1 & 2, 302.

The rult of evidence as to the manner in which the fact may be established is not changed. Marston v. Vultee, 12 Abb. Pr. 143; Edgell v. Hart, 9 N. Y. 216, 59 Am. Dec. 532; Newell v. Wagness, 1 N. D. 68, 44 N. W. 1014; Coburn v. Pickering, 3 N. H. 415, 14 Am. Dec. 375; Bergman v. Jones, 10 N. D. 529, 88 Am. St. Rep. 739, 88 N. W. 284.

*W. J. Courtney,* for Administrator.

Proceedings of a county court in the exercise of its jurisdiction are construed in the same manner and with like effect as are proceedings of courts of general jurisdiction, and its records, orders, and decrees are accorded like force and effect. Joy v. Elton, 9 N. D. 428, 83 N. W. 875; Sjoli v. Hogenson, 19 N. D. 82, 122 N. W. 1008.

If the execution of a voluntary conveyance, however meritorious in itself, leave the donor with insolvent property to meet his existing liabilities, it is fraudulent and void. May v. State Nat. Bank, 59 Ark. 614, 28 S. W. 431; Freeman v. Burnham, 36 Conn. 469; Clayton v. Brown, 30 Ga. 490; Aultman v. Huddlestun, 31 Ill. App. 556; Gable v. Columbus Cigar Co. 140 Ind. 563, 38 N. E. 474; Stewart v Rogers, 25 Iowa, 395, 95 Am. Dec. 794; Ware v. Purdy, — Iowa, —, 60 N. W. 526; Blue v. Schurtz, 115 Mich. 690, 74 N. W. 178; Van Wyck v. Seward, 18 Wend. 375; Seybold v. Grand Forks Nat. Bank, 5 N. D. 469, 67 N. W. 682; Kaehler v. Dibblee, 32 Wis. 19.

Donations in view of death are not regarded as bona fide. Swartz v. Hazlett, 8 Cal. 126; Annin v. Annin, 24 N. J. Eq. 184; Stevens v. Meyers, 14 N. D. 398, 104 N. W. 529; Rev. Codes, § 5000.

*M. A. Hildreth,* for Mary Rutherford, respondent on cross appeal.

There is no allegation in the complaint to the effect that the transfer of the personal property was as a gift, as the trial court found, and such part of the judgment cannot be reviewed. Salemonson v. Thompson, 13 N. D. 183, 101 N. W. 320.

The complaint does not entitle plaintiff to any relief upon the theory that the transfer of the personal property was a gift in view of death. Field v. Syms, 2 Robt. 35; Bradley v. Aldrich, 40 N. Y. 504, 100 Am. Dec. 528; Ross v. Mather, 51 N. Y. 108, 10 Am. Rep. 562; Barnes v. Quigley, 59 N. Y. 265; Beach v. Eager, 3 Hun, 610; Peck v. Root, 5 Hun, 547; Combs v. Dunn, 56 How. Pr. 169; McMichael v.

Kilmer, 76 N. Y. 36; Stevens v. New York, 14 Jones & S. 274, S. C. 84 N. Y. 296; Evans v. Burton, 5 N. Y. S. R. 216.

The recovery must be in accordance with the complaint. Arnold v. Angell, 62 N. Y. 508; Hollister v. Englehart, 11 Hun, 446; Volkening v. DeGraaf, 12 Jones & S. 424; Southwick v. First Nat. Bank, 84 N. Y. 420.

One may give away his property, and if he does so in good faith and without intent to hinder and delay his creditors, the transaction is not fraudulent. Threlkel v. Scott, 89 Cal. 353, 26 Pac. 879; Windhaus v. Bootz, 92 Cal. 617, 28 Pac. 557; Daugherty v. Daugherty, 104 Cal. 221, 37 Pac. 889; Emmons v. Barton, 109 Cal. 662, 42 Pac. 303.

Goss, J. This action in equity is brought to have property owned by John Rutherford, now deceased, and by him transferred to his wife, Mary Rutherford, declared subject to an alleged debt of decedent. The administrator was appointed to collect said claim, approved by the county judge as a valid demand for $789.50. At his death Rutherford left no estate. On trial this action was dismissed as to the real estate, but the personal property was held subject to disposition by the probate court to the amount of the claim. The widow attempted to prove that said claim had been fully paid, and offered in evidence canceled checks and receipts for about $900, asserted to have been paid thereon. This proof was excluded, and the approval of the claim by the county judge was held to be *res judicata* of its validity in this action, and that the matter of payment was one within the sole cognizance of the probate court, except as it might reach the district court by appeal from probate court. The trial court found that all the property was both transferred and received with no actual intent to defraud, hinder, or delay collection of debts. From this finding the administrator appeals, demanding trial *de novo* of the entire case. The trial court further found that the note was an unpaid, outstanding, valid claim against the estate of the decedent; that the transfers by deed and bill of sale were made without consideration and with full knowledge of the impending and approaching death of Rutherford; that the real estate so transferred consists of a section of land and of $3,000 of personal property; that the personal property in excess of exemptions to the widow should be subject to the debt of Harvey, in so far as it "may be

shown to be a just and equitable claim against said estate;" and that the transfer of personal property thus made was a gift *causa mortis,* which, under § 5000, Rev. Codes 1905, must be treated as a legacy so far as the creditors of the deceased are concerned. From these findings the widow appeals on separate specifications of fact, as to which only a review is demanded.

The administrator has moved to dismiss the appeal of Mary Rutherford on the ground that the specifications of fact are insufficient to confer jurisdiction of her appeal, and cites Douglas v. Richards, 10 N. D. 366, 87 N. W. 600; Salemonson v. Thompson, 13 N. D. 182, at page 189, 101 N. W. 320; and Stevens v. Meyers, 14 N. D. 398, 104 N. W. 529, in support of the motion. Specifying merely ultimate conclusions of law to be reviewed is insufficient to warrant any retrial, but the defendant has specified both conclusions of fact and evidentiary facts in relation to particular findings, with parts of the complaint upon which the same are based, with sufficient particularity as to facts desired reviewed to authorize a retrial thereof. The motion is denied. Nothing can be gained by treating the appeals separately, as all matters are before the court on one appeal or the other, and the cause will be tried *de novo.* The complaint is sufficient to charge that the decedent transferred his property, and that the same was received with the intent of both transferrer and transferee to hinder, delay, and defraud the decedent's creditors in the collection of their debts. Paragraph 3, in the words of § 8173, Rev. Codes 1905, pleads a transfer and reception of property with such intent and without consideration.

There is no dispute in the facts. The husband died one day after the transfers to the wife. These transfers were made as a mere business precaution to avoid administration of the estate, and it does not appear that the debt, the basis of these proceedings, was considered at all. But the claim having been approved by the county judge, it must be taken as prima facie valid and existing, and that upon such hypothesis its payment will be avoided if these transfers are valid and the estate be not subject to its payment; and that ever since said transfers were made there has been no estate with which to pay claims. The act of insolvency was the delivery of the transfers.

The complaint avers a fraudulent conveyance of real and personal property. It is framed under § 8173, Rev. Codes 1905, covering any

fraudulent conveyance of real or personal property, and authorizing the personal representative to pursue and apply property so transferred by decedent for the benefit of creditors of his estate. The widow claims and the court found the transfers in question were not in fact fraudulent. But the court applied § 5000, Rev. Codes 1905, reading: "A gift in view of death must be treated as a legacy so far as relates only to the creditors of the giver," and thereunder adjudged the personalty subject to probate administration for payment of debts. Both §§ 8173 and 5000, Rev. Codes 1905, are found in the early Codes of California, some years prior to their appearance here, and in neither state has any amendment or change been made since 1872. Wisconsin has the same statute (Andrew v. Hinderman, 71 Wis. 148), 36 N. W. 624, as have most of the states, the statute being but a declaration of the common law on fraudulent conveyances. The law in California, under this statute § 8173, may be considered settled as to every question presented. The defendant contends that, in the absence of specific proof of fraudulent intent on the part of the decedent, the action must be dismissed; that fraud is a matter of fact, to be established by proof, like any other fact, and that there is an utter failure of proof thereon. Such was the conclusion of the trial court in finding the fact to be that the conveyances were not fraudulent. On the same evidence the contrary would be the holding of the California courts. Shiels v. Nathan, 12 Cal. App. 604, 108 Pac. 34. Bernard Shiels, the decedent, before his death transferred his personal and real estate to his brother Michael, from whom Bernard's wife, Mary Shiels, sought to recover a claim allowed by the probate court. "It is urged that there was no evidence of actual fraudulent intent in conveying the property to Michael. . . . The complaint avers that Mary Shiels was a creditor of Bernard at and before the date of the transfer, and that 'he, without any valuable or adequate consideration therefor,' conveyed to Michael the land and the money on deposit, and thenceforward to the date of his death 'he had no property out of which said debt could be paid, and he thereby rendered himself insolvent,' and so continued until he died. . . . It was, however, necessary to show further that the conveyance was with fraudulent intent. It was held in Emmons v. Barton, 109 Cal. 662, 42 Pac. 303, that where the consideration was love and affection alone, it was not sufficient unless made with intent to defraud the

creditors; that the intent is a question of fact, and that a voluntary conveyance is not prima facie fraudulent, and fraudulent intent is not to be arrived at as a presumption of law. It was further held in that case, 'Pronounced insolvency at the time of the grant would no doubt be a strong circumstance tending to show fraudulent intent; and in the absence of other controlling facts it would be sufficient to justify a finding of such intent.'

"It appeared from the evidence that Bernard was mortally ill and in the hospital when he made the conveyance, and died five days thereafter; that he declared that it was his intention to convey all the property he possessed, and so far as known he did so; that his brother Michael served for a time as executor of Bernard's estate, and could find no property belonging to him, and for that reason asked to be and was discharged. We think the evidence was sufficient to justify the finding that by the conveyance he rendered himself insolvent. Strictly he was not insolvent when he made the conveyance, but coincidentally with and by that act he became insolvent, and this we think brings the case within the rule in Emmons v. Barton, supra, and justifies the finding that the conveyance was with fraudulent intent to defraud his creditors."

In Emmons v. Barton, supra, the court said: "It is clear that a conveyance made by a husband or father to his wife or child is valid as against creditors, although the consideration was love and affection alone, unless it was made with intent to defraud his creditors. Peck v. Brummagim, 31 Cal. 441, 89 Am. Dec. 195; Barker v. Koneman, 13 Cal. 9; Wells v. Stout, 9 Cal. 480; Re McEachran, 82 Cal. 219, 23 Pac. 46; Cohen v. Knox, 90 Cal. 266, 13 L.R.A. 711, 27 Pac. 215; Knox v. Moses, 104 Cal. 502, 38 Pac. 318. . . . But the intent is a question of fact, and must be averred and proved. A voluntary conveyance is not prima facie fraudulent, and a fraudulent intent is not to be arrived at as a presumption of law. Civil Code, § 3442; Threlkel v. Scott, 89 Cal. 351, 26 Pac. 879; Windhaus v. Bootz, 92 Cal. 617, 28 Pac. 557; Bull v. Bray, 89 Cal. 286, 13 L.R.A. 576, 26 Pac. 873. . . . There must be evidence upon which the jury or court can base a finding of the fact that the intent of the grantor at the time of the grant was to defraud his creditors." But in Shiels v. Nathan, supra, this case is cited with approval, and held applicable because the con-

28 N. D.—7.

veyance devesting the decedent of all his property rendered him insolvent, and brought him within the rule announced in Emmons v. Barton, supra.

Sec. 8173 covers both realty and personalty, authorizing the recovery of either or both under the facts. This renders unnecessary a discussion of § 5000, further than to state that it is already settled in Seybold v. Grand Forks Nat. Bank, 5 N. D. 460, 67 N. W. 682, that the statute declares but the common law, and announces the necessity of the same essentials, except proof of fraudulent nature of the transfer, to subject a gift *causa mortis* to the payment of debts against a decedent's estate as is required by § 8173, Rev. Codes 1905. But to prevent confusion in the application of this precedent, it is well to determine the status of this property, so far as the estate of the grantee and transferee is concerned. The transfers are not void, and the administrator standing in the shoes of the decedent who executed the fraudulent conveyances can assert their invalidity only for the purpose and so far as necessary to pay debts, and can take the property transferred only to that extent. Tully v. Tully, 137 Cal. 60, 69 Pac. 700. "The transfer was valid as between the parties, and it could not be considered as void in law in the absolute sense." Statutes as to fraudulent conveyances are designed to protect creditors, and are not intended to affect in any manner the rights of the parties themselves to the conveyances, or their heirs. Charles v. White, 214 Mo. 187, 21 L.R.A.(N.S.) 481, 127 Am. St. Rep. 674, 112 S. W. 545; Brasie v. Minneapolis Brewing Co. 67 L.R.A. 865, and note at page 889 (87 Minn. 456, 94 Am. St. Rep. 709, 92 N. W. 340). Though these transfers are fraudulent the judgment should be that the property fraudulently conveyed, or so much thereof as is necessary, be applied to the satisfaction of their debts, and that the residue, if any, go to the grantee; and the property cannot go into the assets of the estate for any other purpose than the payment of the debts. Re Vance, 141 Cal. 624–628, 75 Pac. 323. Emmons v. Barton, supra, announces a rule for the entry of judgment in this case, should plaintiff eventually recover. Ackerman v. Merle, 137 Cal. 157, 69 Pac. 982. "If the unfortunate holders of the fraudulent conveyances think that there is a large margin of value in their property in excess of the creditors' claims, that ought not to be handled by the administrator, the law leaves

them to remedy their ills by paying off the creditors that they sought to defraud. The creditors once paid, there would be no creditors and no ground of action for the benefit of creditors," under § 1589, California Civil Code, same as § 8173, Rev. Codes 1905. The administrator, if he finally recovers, is entitled to select so much of the personal property as shall be reasonably necessary and sufficient to pay this claim and all costs, inclusive of costs of county court; have title decreed in him for the purposes of sale; sell the same and pay the debts and costs and render the surplus, if any, back, with an accounting, to defendant. After personalty is sold, any deficiency may be taken from real estate, to which, to that extent, resort may be had. Shiels v. Nathan, 12 Cal. App. 604, at page 622, 108 Pac. 34.

The defendant offered to show payment of the note. A demurrer was sustained, the court holding the defense of payment not available in this action. Proof tending to show that the claim had been paid in full was likewise disregarded on objection "that the matter of the debt is *res judicata,* and is not open to a collateral attack in this court," the approval of the claim by the county judge being conclusive in this action. Proceedings had in the probate court are in evidence, and show a formal order reciting its presentation November 15, 1910, and its approval of that date, and later an appointment of plaintiff as administrator.

There is thus presented the question, new in this jurisdiction, of whether the litigation of the merit of this claim in this equitable action would be an invasion of the exclusive original jurisdiction of the county court to administer estates of decedents. An extended search of the authorities discloses a demarcation in jurisdiction, in cases similar to this, often more theoretical than actual. Sec. 111 of our Constitution provides: "The county court shall have exclusive original jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, the settlement of the accounts of executors, administrators, and guardians, the sale of lands by executors, administrators, and guardians, and such other probate jurisdiction as may be conferred by law." Administration of estates, and particularly "the settlement of the accounts of executors and administrators," necessarily includes the establishment and payment of debts of the decedent's estate, and belongs to the "exclusive original jurisdiction in

probate and testamentary matters, "so vested in the county court. And this includes the power to litigate the validity of claims against estates and to enter final judgment thereon as against the estate. No other court possesses this power, except as an exercise of appellate jurisdiction, as a judgment against the decedent must be filed and ranked as a claim against the estate, and a judgment in a court of law against the administrator has but the force of an approved or established claim against the differing from ordinary judgments of courts of law in that it is no lien upon real estate in course of administration, and in that no execution can be issued or levied; otherwise a preference might thus in effect be obtained thereby. The appellate jurisdiction of the district court at law is exerciseed on an appeal from the confirmation of the report of a referee taken under §§ 8110 and 8111; or on an appeal from the allowance of an administrator's account (§§ 8189–8199 and 7985), which to be valid must be had on notice (Sjoli v. Hogenson, 19 N. D. 82–96, 122 N. W. 1008); or on an appeal from the sale of the property (§§ 7964, 7965). There is no appeal from the *ex parte* allowance and approval of a claim by the personal representative and the county judge. And in this action, brought under § 8173, in equity (a creditors' bill to recover assets that would, but for a fraudulent conveyance, be a part of and inventoried as assets of the estate, and subject to the exclusive original jurisdiction of the probate court to administer thereon), the administrator is but the personal representative of the estate, as to creditors and heirs, legatees and devisees, and exercises thereunder a statutory power conferred in aid of probate jurisdiction by §§ 8173, 8160 and 8161. This equitable action is but ancillary to administration, to aid which it is brought; that the administration claims, prima facie established as debts by the approval of the administrator or by judgment against the estate, may be paid in course of administration by applying the property procured in equity to the payment of the debts established as such in probate. So viewed, the debt remains for final adjudication as a part of the administration, the establishment of claims in turn but a part of the judgment determined in the "settlement of the accounts of the administrator," the exclusive, original jurisdiction of which is in the county court under constitutional mandate. Equity will not lend its powers to determine

issues properly triable at law, neither will it do so to pass upon debts,— a determination properly belonging to and a part of the administration of estates. But as in law, in aid of the enforcement of legal rights and after a party has exhausted his legal remedy, or when all further pursuit of the debt in law must be useless and remediless, equity will assume jurisdiction in aid of law and as supplementary thereto; so here it likewise brings into administration, to pay debts established in course of administration, property in equity belonging to the estate, but held by third persons through fraudulent conveyance by the intestate. Note to Ladd v. Judson, 66 Am. St. Rep. 276, 20 Cyc. 672C and 282E. This but leads inevitably to the conclusion that this equitable action is necessarily but secondary to and in aid of administration, which primarily, in this case, is to pay the debts of the estate, there being no legacy, devise, or inheritance to effectuate. The approval of the claim by the county judge established the claim conclusively, so far as the district court action was concerned, the issue in which is not to litigate the debt, but the recovery of property alleged to belong to the estate, the right or power to sue being established by the probate record of the administrator's appointment and the approval of the claim. The district court findings should not attempt to establish that the claim is a debt owing by the estate, but only the identity of the claimant and the amount at which his claim has been approved by the probate court, leaving open to further adjudication in that court the actual validity of the claim not yet conclusively established in the probate court as a debt, but only prima facie established, the validity of which debt may yet be drawn in question by the fraudulent grantee of the intestate upon the hearing for the allowance of the administrator's account, or upon application made in probate to sell any property, real or personal, that may be decreed to be a part of the estate in this suit in equity. But any hearings involving the validity of the debt are adjudications necessarily to be had in the first instance in county court, from any order so entered an appeal to the district court being allowable. It is to be emphasized that the denial of the defendant's right to prove payment, under her plea of payment in the district court action, is not based upon any theory of estoppel by judgment, as the great weight of authority is that the *ex parte* approval of the county

court, were the assault thereon made in that court, would not be given force of a judgment or estop the heir or grantee. Freeman, Judgm. § 163; Black, Judgm. § 558–560; Cooley, Const. Lim. §§ 81, 82; 18 Cyc. 510B; Simons, Prob. Pr. §§ 468, 469; Ross, Prob. Law & Pr. 545; 1 Church, New Prob. Law & Pr. 724; Noe v. Moutray, 170 Ill. 169–175, 48 N. E. 709; Note to 65 Am. Dec. 118, at page 125. Especially is this true as to real property, title to which descends direct from the intestate to the heir or devisee, though, in this state, encumbered by or subject to valid debts of the estate. Rev. Codes 1905, §§ 8071–8160 and 8162. Instead, it is the exclusive original jurisdiction of the county court to determine the validity of this claim in the first instance that excludes the proof here offered. But it might be urged that the *ex parte* approval of the claim is a prima facie determination of it sufficient to clothe the administrator with the power to sue under the statutes, but with the suit in its progress to be governed, as to proof and defenses, as is the ordinary suit in equity. But this, though plausible, disregards the fundamental principle that it is not a question of the power or procedure of the court of equity or of the administrator to invoke the aid of that court that is in question, but, instead, the real question is which court has original jurisdiction to determine the validity of debts asserted against estates of decedents. This is answered by our Constitution. Morgan's Estate, 46 Or. 233, 77 Pac. 608, and again in 78 Pac. 1029; 1 Woerner, Am. Law of Administration, §§ 150–155. It may be urged that the suit in equity is but an indirect appeal on the question of debt, but this contention is condemned by the entire theory upon which creditors' bills in equity are allowed, they being not to review the debt, but to enforce its payment. Besides, the defendant is by statute afforded ample opportunity, after this judgment, to litigate in county court, or on appeal therefrom, the question of debt. Nor can the court permit defendant to controvert the indebtedness on any plea that the administrator has entered a court of equity, and that it would be inequitable or useless for equity to aid in the enforcement of a debt that was paid. Under the statute the approval of the debt by the county judge has the force and effect, so far as this creditors' bill is concerned, of a judgment. Rev. Codes 1905, §§ 8108–8109. Proof of its approval, or that the claim is in judgment

and has been filed with the administrator, is necessary to prove power to sue. The validity of the debt cannot be drawn in issue. In addition thereto the administrator must establish a deficiency of assets of the estate to pay the claim or claims, that is, proof of the insolvency of the estate; and that the conveyance by which grantee obtained title was made in fraud of his creditors, and that the claimant was a creditor so defrauded by the decedent, that is, was a creditor before the transfer was made. Upon the court finding these facts, the grantee, by operation of the judgment rendered thereon, continues the owner of the title thus determined to be fraudulently received, but with the property charged with the right in the administrator to sell the same, in the course of administration, to satisfy debts determined by the probate court as owing by the estate. Whether the administrator can sue upon this claim, and apply the property taken to the payment of claims other than or in addition to the one exhibited in the equity action, is doubtful, but we do not determine the question. It is well to here indicate the course of procedure to be followed to collect claims as this against insolvent estates, and where no personal representative has been appointed. The creditor first petitions for administration (§ 8024), establishing his interest as a party in suit by alleging his claim. The validity of his claim is not in issue on this petition. Otherwise a petitioner would have his claim thus established by the granting of letters of administration to himself or some other party. The law requires that the personal representative shall then give notice to creditors to present claims, during which period the petitioning creditor must present his claim for allowance, as must all other creditors. It is thereafter approved by the county judge, and as an approved claim constitutes a basis upon which an equitable action, such as this, may be maintained by the administrator. Not that it is necessary that the four or six months' period for presentation of claims shall expire before the commencement of the creditors' bill in equity, as suit may be immediately begun upon such allowance, and after the expiration of the period within which to present claims the administrator may, by supplemental bill, allege all the claims then approved, and thus establish the amount for which the property fraudulently obtained and held shall respond for the payment of claims prima facie but not yet conclusively estab-

lished in administration until the administrator's accounting is approved. This is an outline of the procedure contemplated in the Probate Code in cases of this kind.

The result of a review of the authorities would not be complete without distinguishing some that may be cited apparently until the Constitutions and statutes are investigated—opposed to this holding. Some states have held that the claimant may maintain a creditors' bill for the same purpose as this one is intended, and establish his claim thereon, without going into probate. California has so held. Wickersham v. Comerford, 96 Cal. 433, 31 Pac. 358, though contrary to its line of holdings; Mesmer v. Jenkins, 61 Cal. 151; Aigeltinger v. Einstein, 143 Cal. 609–615, 101 Am. St. Rep. 131, 77 Pac. 669; Shiels v. Nathan, 12 Cal. App. 604, 108 Pac. 34, and cases cited in these reports. While California has, in the main, our statutory procedure in probate, and a great portion of our statute evidently was taken from that state, yet in applying our statutes, under our constitutional provisions clearly defining the jurisdiction of our probate court, it is necessary to distinguish between the present and past California constitutions and our own as to probate jurisdiction. That state has had three different constitutions, and the question of whether probate jurisdiction was there conferred by statute or by the constitution has been much in question. Burris v. Kennedy, 108 Cal. 331, 41 Pac. 458. And the second matter of much significance is that probate and administration matters are not there handled in a separate court, but, instead, are vested in the court of general jurisdiction of law and equity and probate, the superior court. The result has inevitably been a tendency to ignore jurisdictional lines of demarcation, or give them less importance than though probate jurisdiction was vested in a separate court and under clearly defined constitutional enactments. In this state our Constitution guarantees stability of probate jurisdiction in the matters therein defined, and confers upon the legislature power to further define the same by legislative act as to other matters not plainly within the original jurisdiction of other courts. See Constitution, § 111. Other states, as New York, have not conferred upon the probate court jurisdiction to litigate disputed claims (2 Williams, Exrs. & Admrs. 249), but, instead, leave that to courts of general jurisdiction. When this is kept in mind one can see why cases otherwise on all fours with this, as

illustrated by Sharpe v. Freeman, 45 N. Y. 802; Johnson v. Johnson, 63 Hun, 1, 17 N. Y. Supp. 570; Kent v. Kent, 62 N. Y. 560, 20 Am. Rep. 502; Butler v. Johnson, 41 Hun, 206–211; Cook v. Ryan, 29 Hun, 249; Platt v. Platt, 105 N. Y. 488, 12 N. E. 22; Burnham v. Burnham, 46 App. Div. 513, 62 N. Y. Supp. 120, and similar holdings apparently contrary to this, are inapplicable, in many of which defendants were permitted to litigate the validity of the claim upon which the administrator sued to recover assets for an estate. Besides, in New York, the right of a creditor to sue is especially conferred by statute, and which statute would in no wise conflict with any constitutional provisions, inasmuch as the power to establish the claim by suit is in courts of general jurisdiction. For a general discussion and classification of these statutes see § 1152, and extensive note in Pomeroy's Equity Jurisprudence, Third Edition; O'Connor v. Boylan, 49 Mich. 209, 13 N. W. 519; Woerner, Am. Law of Administration, § 392; 3 Williams, Exrs. & Admrs. 665, and note; and 2 Williams, Exrs. & Admrs. 249, and note. Nor is our holding contrary to the right of recovery for death by wrongful act, permitted by our statutes, wherein the administrator sues, as such a recovery is not for the estate, but for the next of kin, and the proceeds of such recovery are not subject to administration. Satterberg v. Minneapolis, St. P. & S. Ste. M. R. Co. 19 N. D. 38, 121 N. W. 70. Construing § 7698, Rev. Codes 1905. See also Willard v. Mohn, 24 N. D. 390, 139 N. W. 979.

The judgment of the lower court in staying action by the administrator on the judgment is under review. The administrator is seeking relief on behalf of the estate. It is proper and the duty of the court of equity to not only permit the property to be subjected to the payment of the claim proven in course of administration, but also to conserve said property, and keep the same as a fund to which resort may be had by the administrator only after hearing had in probate court on his accounting, as may be had under § 8123; and upon which hearing this grantee and heir may be heard to urge her defense of payment of the claim, and, if decided adversely to her, a review be had in the district court on appeal. An interlocutory judgment may be entered in this action, with equitable relief to abide the event of the final determination of the issue of payment in the probate court or on appeal, if taken. The findings and judgment should not determine the amount, but merely

that the administrator sues for the benefit of a claimant whose claim has been approved by the county court at a certain amount, as prima facie a creditor of the estate. The district court is without jurisdiction to otherwise pronounce judgment upon the debt, it not exercising appellate jurisdiction. The findings and judgment will also describe all the property so fraudulently conveyed and received, and adjudge that the grantee holds title to the same subject to the claim in suit; and that the property may be taken to the amount necessary for its payment, in addition to costs of administration incurred in its collection. The property may be inventoried, and report thereof, with this claim, made to the probate court, upon which an accounting may be had, and further order made concerning this property (§ 8123), wherein all parties interested may participate, and thus, without a sale thereof, the issue of payment be decided in the county court in advance of dispossessing defendant of her property. Should the issue of payment be eventually determined in favor of the claimant, the administrator should exhaust the personal property before resort to realty, notwithstanding the apparently contrary final provision of § 8093, Rev. Codes 1905, which must be construed with § 8130, et seq. But all property conveyed is held subject to the payment of this claim, but personalty to be first applied thereto. Thus the rights of both creditor or administrator and grantee may be protected in this equitable action.

With the slight modifications as herein indicated, to be made in the judgment appealed from, the same is affirmed. The administrator will recover his taxable costs and disbursements on both appeals, if he shall, on final judgment in county court, establish the validity of his claim, on hearing after notice to Mary Rutherford. If final judgment of the county court be for a dismissal of claimant Harvey's claim, as invalid or fully paid, final decree shall be entered herein dismissing this action and taxing all Mary Rutherford's costs and disbursements, on trial and on this appeal, to be entered as a judgment against the administrator plaintiff, who, we assume, has indemnified himself against loss by security taken from creditor claimant Harvey.

Let judgment be entered accordingly.

Goss, J. (on petition for rehearing filed May 21, 1914). Counsel for Mary Rutherford has filed what, speaking mildly, may be called a

vigorous petition for rehearing. Counsel protests against the conclusion that the transfers are to be deemed fraudulent.

He insists that fraud is dependent upon the intent of the grantor at the time of the grant, and that a fraudulent intent in the grantor must be found to have existed in fact, before the transfer can be held to have been fraudulent, and that, as the trial judge has found that the conveyances were not in fact made with intent of the grantor to defraud, such transfers cannot be held fraudulent under §§ 6637 and 6640, Rev. Codes 1905. He calls attention also to the fact that in 1895 the California statute (corresponding to our § 6640) was amended by adding thereto: "provided, however, that any transfer or encumbrance upon property, made or given voluntarily or without a valuable consideration, by a party, while insolvent or in contemplation of insolvency, shall be fraudulent and void as to existing creditors." Prior to such amendment the California statutes under discussion were identical with our own, and the courts of that state held, as our court has held in Stevens v. Meyers, 14 N. D. 398, 104 N. W. 529, that under the mandate of the statute (our present § 6640) "the question of intent is always one of fact; it must be alleged, proved, and found in order to avoid the transfer." Such is the interpretation to be given to § 6640. Counsel asserts that this court is astray in following Shiels v. Nathan, 12 Cal. App. 604, 108 Pac. 34, because that opinion was based upon the California statute as so amended.

That a conveyance may be held to be fraudulent the question of fact arises on the intent; and the determination thereof involves a question of fact, and not of law. Such is our statute and such its construction under Stevens v. Meyers, supra. And under § 8173 the intent to defraud must be present under the express terms of that portion of the statute so prescribing, as well as under that portion thereof having reference to an estate so conveyed, "that by law the deeds or conveyances are void as against creditors." The issue thus presented on trial de novo is one of fact, and to be determined as such under the evidence, with the usual presumptions to be drawn therefrom. And each case of alleged fraudulent transfer must stand largely on its own facts. What is said in Stevens v. Meyers, supra, concerning an attachment levied some four months after a transfer, and wherein it was necessary to prove intent to cheat and defraud creditors of the transferrer, must

have reference to the facts of that case, and read in the light of its facts. Those before us disclose a grantor and owner of much property, with approaching dissolution close at hand, desirous of transferring all his property to his wife for the only possible purpose of vesting his estate in her after his death, and avoiding administration or probate proceedings thereon, and with a debt of considerable size outstanding and unpaid, for which he made no provision for payment. This transfer was made after the owner had been informed "that the instrument would be perfectly good if the debts were paid." Whether this statement be construed as a caution given him that the transfers would not be valid if there were outstanding debts, and the conveyance to be made did not provide for their payment; or whether the conveyance was made to the wife for her to thereafter pay the debts to remove any chance of invalidity, is immaterial, except that, in the latter case, the present refusal of the wife to pay would evidence an actual intent on her part to now defraud decedent's creditors, and discredit her present declared claim of having no fraudulent intent toward her husband's creditors at the time she accepted the conveyance, and the persistence of her defense in this equitable action, built around averred absence of intent on the decedent's part and her own as well,—a defense that is more unequitable than meritorious, inasmuch as this court has left the door open for her to establish, if she has it, her alleged defense of payment in full—but emphasize the necessity of care in determining the fact of whether the conveyance should be held fraudulent or not, that an open door to defraud may not be established by this precedent. "Evidence of the fraudulent use subsequently made of a deed or mortgage may be shown to prove the fraudulent intent with which the instrument was made." Moore, Fraudulent Conveyances, § 926.

That the fraudulent intent is to be established as a fact, under § 6640, does not bar application of the usual presumptions of fact from the evidence. Bigelow, Fraudulent Conveyances, 1911 ed. 78, 79, and note. The evidence concerning intent should be weighed no differently than usual in cases where the intent must be found. Even in criminal cases, where the presence of an intent constitutes the gist of the crime, and the absence thereof establishes innocence, intent nevertheless is determined by the application of presumptions of fact to facts in evidence, and it is therefore proper to instruct the jury that the law

will permit them to assume that, in the absence of evidence to the contrary, one is presumed to intend the natural and probable consequences of his voluntary acts; and that, in determining intent, such presumption may be considered with the evidence of intent. Such presumption has equal application here in determining the fact of the presence of the fraudulent intent at the time of the transfer, the rule being as applicable in cases triable by a court as in those determinable by a jury.

There is evidence determinative of intent, besides the fact of the voluntary conveyance made without consideration, which fact in itself, by the terms of § 6640, is insufficient to establish a prima facie case of fraudulent transfer. The grantor intentionally transferred title to, and control of, every vestige of his property, and this without having made any provision for the payment of his debts, unless it be construed under the evidence that he intended his wife to pay his debts out of the property transferred to her. It cannot be said that the grantor supposed he had no debts, as, under the record, he is presumed to have known that he was owing this claim, and, with such knowledge, voluntarily alienated all his property. He could not in his lifetime, after this transfer, be heard to say that he did not know the effect of such alienation would be to "obstruct the enforcement by legal process of his creditor's right to take the property affected by the transfer" (Rev. Codes 1905, § 6629), as, when proof is made of the intentional act, the law, in the absence of evidence to the contrary, presumes that the person acting intended the natural and probable consequences of his act, voluntarily creating his insolvency. Nor does the fact that the grant was a death-bed transfer change the situation from the ordinary voluntary transfer without valuable consideration by a debtor of all his property to his wife. This transaction is to be regarded in no different light because the debtor, shortly thereafter, died, than it would be regarded had he recovered and were still living. The subsequent fact of death cannot change the nature of the transfer from fraudulent to valid. If this transfer was fraudulent during the period after delivery of the deeds to the death of the grantor, it still remains a fraudulent transfer. If it be contended that a grantor *in extremis* is not in all probability in such a frame of mind as to intentionally defraud, and that the transfer is therefore valid, it follows that no transfer made under such circumstances could ever be attacked successfully, should he

recover. Such a presumption must at best be a mere speculation, dependent largely upon the individual characteristics of the grantor, and whether his anxiety to reimburse his creditors would outweigh, or, on the other hand, be subordinated to, his desire to leave his property beyond their reach, and for the benefit of the family surrounding the death-bed, desire for adequate property provision for whom might naturally induce a disregard by the grantor, even under such circumstances, of the rights of his creditors to his property. On the whole, it would seem that the transfer should be regarded as though intentionally made under ordinary circumstances, with knowledge of debts unpaid, and with the usual presumptions of fact and law applying. If deceased were still alive, and both he and his wife were contending that this property should not be applied to his debts, because at the time of the transfer he honestly believed that his death would soon occur, and the transfer was so made as a provision for his family, notwithstanding his admitted insolvency and his knowledge of the effect of the transfer upon the rights of his creditors at the time that he executed a conveyance, all precedent would condemn the transfer as fraudulent as to existing creditors. And to sustain the contention of the widow under the facts before us is in practical effect the equivalent of repealing to that extent Rev. Codes 1905, § 8173, under which the administrator seeks this property. If this transfer is not fraudulent as to creditors, one thus made a considerable time before death is not fraudulent. If this decedent can clothe his wife in this manner with ownership of his estate freed from his debts, there is force in the contention of the administrator, that all one needs to do to provide for his family after death is to so manage his business affairs that he may die seized of much real estate, while keeping his debts unsecured, no matter what their amount, and then, shortly before death, deed it over to his family, thereby avoiding not only administration of his estate, but the payment of his honest debts, although their payment might consume the entire property. The size of the claim in relation to the property transferred must be largely immaterial, as the right of the creditor to payment is the same whether the estate comprises one or ten sections. Sec. 8173 takes care of any inequality of the debt to the estate, by providing that only so much of the estate as is necessary to pay the debt may be

taken, and to all the world beside the creditor, or the administrator acting for him, the conveyance is valid.

But counsel contends that the California precedent we have followed has been influenced by the 1895 amendment thereto, adding the provision, that any transfer or encumbrance of property, made or given "voluntarily, or without valuable consideration by a party while insolvent or in contemplation of insolvency, shall be fraudulent and void as to existing creditors." Counsel contends that this statute influenced the decision of Shiels v. Nathan, 12 Cal. App. 604, 108 Pac. 34, and that, in following that precedent, we are indirectly following a case based upon construction of a statute, and when we have no corresponding statutory provision. Counsel's contention is without foundation, and contrary to the California decisions. If the opinion in Shiels v. Nathan be taken at its face, it is based entirely and alone upon that court's construction of § 1589, Code Civil Procedure of California, identical with § 8173, Rev. Codes 1905. In Shiels v. Nathan, the court is careful not to base its decision upon the 1895 amendment, as appears from the following excerpt from the opinion, found at page 621 of 12 Cal. App., at page 41 of 108 Pac.: "Whether § 1589, Code Civil Procedure, is to be given the same effect as § 3442 of the Civil Code [containing the 1895 amendment], need not be decided." The court refrains from placing its decision upon the statute as amended, but, instead, announces that it is following Emmons v. Barton, 109 Cal. 662, 42 Pac. 303. By reference to that case we find a decision filed November 7th, 1895, presumably upon an appeal taken before the statute of 1895 was enacted, and upon a transfer made in 1890, five years before the amendment. Hence, Emmons v. Barton, supra, must have been decided without reference to the 1895 amendment. It holds: "Pronounced insolvency at the time of the grant would no doubt be a strong circumstance tending to show fraudulent intent, and in the absence of other controlling facts *it would be sufficient to justify a finding of such intent;*" and is again quoted in Shiels v. Nathan, as the presumption of fact applying when, as there stated, "by the conveyance he rendered himself insolvent. Strictly he was not insolvent when he made the conveyance, but, coincidentally with and by that act he became insolvent. And this we think brings the case within the

rule in Emmons v. Barton, supra, and justifies the finding that the conveyance was with fraudulent intent to defraud his creditors." No cases cited by counsel conflict with or modify Emmons v. Barton, or Shiels v. Nathan, supra. Nor is this precedent based upon any except statutes identical with our own. Nor does our holding conflict with or overrule in any particular Stevens v. Meyers, 14 N. D. 398, 104 N. W. 529. Colorado has an exact duplicate of our § 6640, Rev. Codes 1905 in § 2033, Mills's Anno. Stat. of 1891, or § 3073, Mills's Anno. Stat. of 1912, construed in Wells v. Schuster-Hax Nat. Bank, 23 Colo. 534, 48 Pac. 809, reviewing decisions of that state. After quoting that statute the court says: "It may be and doubtless is true that no corrupt motive prompted Hosea in making the settlement [gift of real estate as a settlement for a daughter by her father] ; nor was there any participation in the wrongful intent, if any, upon the part of the grantee. But where, as here, the conveyance is in the nature of a gift, it is not necessary to show participation in the fraud by the grantee." Knapp v. Day, 4 Colo. App. 21, 34 Pac. 1008.

Minnesota has our statute § 6640. See Revised Laws of Minnesota of 1905, § 3500; Gen. Stat. Minn. of 1913, § 7015, construed by the Federal circuit court of appeals of that district, in Hessian v. Patten, 83 C. C. A. 545, 154 Fed. 829, in which it is declared: "A voluntary conveyance by an insolvent grantor is fraudulent in itself because such a deed cannot be made without hindering and defrauding his creditors ;" having reference to a voluntary conveyance without a valuable consideration, and citing, among others, the case of McCord v. Knowlton, 79 Minn. 299, 82 N. W. 589.

This is clearly a gift by the husband to the wife, made in the form of deed, instead of a will, to avoid necessity of probate or administration. For all purposes she has no equities or interest in the property except it be subject to creditors. No good reason in fact or law exists why it should be treated in equity, as to existing creditors, other than as a will or devise, if the fact of the death of donor be considered at all.

Petition is denied.